UNITED STATES of America, Plaintiff,

v.

James RICCARDI, Defendant.

No. 02–20060–01–JWL.

United States District Court, D. Kansas.

April 11, 2003.

**1216**

Kim M. Berger, Office of U.S. Atty., Kansas City, KS, Paul R. Almanza, U.S. Dept. of Justice, Washington, DC, for Plaintiff.

James R. Wyrsch, Wyrsch Hobbs & Mirakian, PC, Kansas City, MO, John P. Ryan, Jr., Law Office of John P. Ryan, Jr., Grandview, MO, Scott C. Gyllenborg, Scott C. Gyllenborg, PA, Olathe, KS, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, Chief Judge.

A jury found James Riccardi guilty of two counts of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and two counts of attempting to persuade, induce, entice, or coerce a minor to engage in illegal sex acts in violation of 18 U.S.C. § 2422(b). At the close of the government's evidence, Mr. Riccardi filed a motion for judgment of acquittal.

The court took the motion under advisement and ultimately granted it in part and denied it in part. Specifically, the court granted a judgment of acquittal on Count IV of the indictment and denied the motion as to all other counts.

The matter is before the court on Mr. Riccardi's motion for judgment of acquittal and/or new trial pursuant to Rules 29(c), 33 and 34 of the Federal Rules of Criminal Procedure (Doc. 131). Mr. Riccardi raises numerous arguments in support of his motion, many of which the court has addressed previously. None of the matters raised warrants relief under the Federal Rules of Criminal Procedure and the court denies the motion in its entirety.

## BACKGROUND

The court has set forth the factual events giving rise to this trial in its previous Memorandum & Orders (Docs.73, 74, 76). The following facts are of particular relevance to Mr. Riccardi's motion for judgment of acquittal and/or new trial.

On June 20, 2002, the government filed an indictment charging Mr. Riccardi with one count of possessing child pornography and two counts of attempting to persuade a minor to engage in an illegal sex act. On August 22, 2002, the government filed a superseding indictment. In Counts I and II of the superseding indictment, the government charged Mr. Riccardi with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Count I was founded upon graphic image files seized from Mr. Riccardi's personal computer. Count II was founded upon Polaroid photographs seized from Mr. Riccardi's residence. Counts III through V charged Mr. Riccardi with attempting to persuade, induce, entice, and coerce a minor to engage in illegal sex acts in violation of 18 U.S.C. § 2422(b). Count III was based upon a telephone call Mr. Riccardi placed to a minor in Leawood, Kansas. Count IV was

based upon a telephone call Mr. Riccardi placed to a minor in Leavenworth, Kansas. Count V was based upon a telephone call Mr. Riccardi placed to a minor in Higginsville, Missouri.

On August 6, 2002, Mr. Riccardi filed a motion to suppress the physical evidence obtained from the search of his residence and personal computer. The court held an evidentiary hearing on defendant's motion on September 13, and 16, 2002. The court denied the motion to suppress in an October 25, 2002 Memorandum and Order (Doc. 73). On September 24, 2002, defendant filed a renewed motion to dismiss the superseding indictment. The court denied the motion to dismiss in another October 25, 2002 Memorandum and Order (Doc. 76). On that same date, Mr. Riccardi also filed a motion to suppress several voice identifications. The court denied the motion to suppress the voice identifications in its third October 25, 2002 Memorandum and Order (Doc. 74).

The matter was tried to a jury from January 15, 2003 through January 21, 2003. At the close of the government's evidence, Mr. Riccardi moved for a judgment of acquittal. The court took that motion under advisement. After both parties rested, the court granted Mr. Riccardi's motion for judgment of acquittal as to Count IV of the superseding indictment and denied the motion as to the remaining four counts.

On January 22, 2003, the jury reached a verdict finding Mr. Riccardi guilty on Count I, Count II, Count III and Count V of the superseding indictment. Mr. Riccardi timely filed the present motion on January 29, 2003.

## STANDARD

██ Mr. Riccardi moves for a judgment of acquittal, new trial and/or arrest of judgment. As to Mr. Riccardi's motion

for judgment of acquittal, the court must uphold the jury's verdict of guilty if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Haber,* 251 F.3d 881, 887 (10th Cir.2001) (quoting *United States v. Schluneger,* 184 F.3d 1154, 1158 (10th Cir.1999)). The court "must ask 'only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find [defendant] guilty beyond a reasonable doubt.' " *United States v. Magleby,* 241 F.3d 1306, 1311 (10th Cir.2001) (quoting *United States v. Springfield,* 196 F.3d 1180, 1184 (10th Cir.1999)). "Furthermore, 'the evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.' " *Id.* (quoting *United States v. Wood,* 207 F.3d 1222, 1228 (10th Cir.2000)).

As to Mr. Riccardi's motion for a new trial, Federal Rule of Criminal Procedure 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed.R.Crim.P. 33. "A motion for new trial under Fed.R.Crim.P. 33 is not regarded with favor and should be granted only with great caution." *United States v. Custodio,* 141 F.3d 965, 966 (10th Cir.1998) (further quotation and citation omitted). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. *United States v. Stevens,* 978 F.2d 565, 570 (10th Cir.1992).

As to Mr. Riccardi's request to arrest judgment, that request is governed by Rule 34 of the Federal Rules of Criminal Procedure, which provides in pertinent part: "The court on motion of a defendant shall arrest judgment if the indictment or information does not charge an offense or

if the court was without jurisdiction of the offense charged." Fed.R.Crim.P. 34.

## DISCUSSION

Mr. Riccardi divides his motion into two separate sections: (1) grounds for judgment of acquittal and/or new trial based on legal insufficiency of the evidence; and (2) additional grounds for motion for new trial and/or arrest of judgment. For purposes of convenience and clarity, the court will address the merits of Mr. Riccardi's motion in the same fashion.

### I. Legal Insufficiency of the Evidence

Mr. Riccardi moves the court to enter an order granting a judgment of acquittal under Rule 29 or a new trial under Rule 33 on five independent legal grounds. The court will address each argument in turn.

### A. Expert Testimony Regarding the Age of the Depicted Subjects

Mr. Riccardi contends that the court should enter a judgment of acquittal concerning Count I because the evidence was insufficient, as a matter of law, to establish that the individuals depicted in the images seized from Mr. Riccardi's computer were under the age of 18 years. In short, Mr. Riccardi believes that expert testimony was required to establish the age of those individuals, which the government did not proffer.

"There is no requirement that expert testimony be presented in child pornography cases to establish the age of children in the pictures." *United States v. Nelson,* 38 Fed.Appx. 386, 392 (9th Cir. 2002). Instead, as the Fifth Circuit has explained, whether expert testimony is necessary depends upon the facts of any given case:

The threshold question-whether the age of a model in a child pornography prosecution can be determined by a lay jury without the assistance of expert testimony-must be determined on a case by case basis. As the government correctly points out, it is sometimes possible for the fact finder to decide the issue of age in a child pornography case without hearing any expert testimony. However, in other cases, the parties have been allowed to present conflicting expert testimony. In yet other cases, one party presents expert testimony, while the other does not. A case by case analysis will encounter some images in which the models are prepubescent children who are so obviously less than 18 years old that expert testimony is not necessary or helpful to the fact finder. On the other hand, some cases will be based on images of models of sufficient maturity that there is no need for expert testimony. However, in this case, in which the government must prove that a model, who is post-puberty but appears quite young, is less than eighteen years old, expert testimony may well be necessary to assist the trier of fact to understand the evidence or to determine a fact in issue.

*United States v. Katz*, 178 F.3d 368, 373 (5th Cir.1999) (internal citations omitted).

■ Here, the government moved to admit six separate computer images (seized from Mr. Riccardi's computer hard drive) of young men portrayed in sexually suggestive poses to support the charge in Count I. Rather than simply admitting all of the images, the court carefully analyzed each computer file to determine whether a lay jury could determine the age of the models without the assistance of an expert. In the end, the court found that only two of the six computer files contained images of models who were so obviously less than 18 years old that expert testimony was not necessary to assist the fact finder. As

such, the court refused to admit the government's proposed exhibits 9–1, 9–2, 9–3 and 9–5, but permitted the government to introduce exhibits 9–4 and 9–6 because those two files contained images of extremely young models depicted in sexually suggestive poses. Expert testimony was not necessary to assist the trier of fact in determining the age of the models in those two exhibits. Mr. Riccardi has offered no argument or analysis to the contrary. As such, the government's evidence was sufficient to sustain the jury's guilty verdict on Count I of the indictment and Mr. Riccardi is entitled to neither a judgment of acquittal nor a new trial on this ground.

## B. Material Variance

Mr. Riccardi next argues that the court should acquit him of the charge contained in Count V because there was a material variance between the allegations contained in the superseding indictment and the government's proof at trial. Specifically, Mr. Riccardi argues that Count V charges him with an *attempted* violation of 18 U.S.C. § 2422(b), but the government proved a completed offense at trial.

■ " 'A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment.' " *United States v. Hanzlicek*, 187 F.3d 1228, 1232 (10th Cir.1999) (quoting *United States v. Edwards*, 69 F.3d 419, 432 (10th Cir.1995)). "Similarly, a shift in the government's theory from the one set out in the indictment to that presented at trial may also constitute a prejudicial variance." *United States v. McClatchey*, 217 F.3d 823, 831 (10th Cir.2000) (citing *United States v. Meyers*, 95 F.3d 1475, 1485 (10th Cir.1996)). Not all variances entitle a defendant to relief. Instead, a defendant must show that the variance substantially prejudiced his or her defense to warrant relief under Rule 29 or Rule 33. *United*

*States v. Caballero,* 277 F.3d 1235, 1243 (10th Cir.2002) (a "[v]ariance between the indictment and the proof is fatal and warrants overturning a criminal conviction only upon a showing of substantial prejudice"); *United States v. LaHue,* 261 F.3d 993, 1010 (10th Cir.2001) ("A new trial is only necessary...if the variance substantially prejudiced the defendant's right to a fair trial").

■ In Count V, the indictment charged Mr. Riccardi with attempting "to persuade, induce, entice, and coerce an individual from Higginsville, Missouri, who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(b)." At trial, the evidence established that Mr. Riccardi not only *attempted* to persuade the young man from Higginsville, Missouri to engage in an illegal sex act, but also that the young man did engage in the illegal sex act, thus completing the crime in Count V. Assuming that this event constitutes a variance, Mr. Riccardi has failed to make a showing of substantial prejudice. The indictment contains no factual assertions that are inconsistent with the government's evidence and/or theories it presented at trial. Mr. Riccardi fails to explain how this alleged variance affected his substantial rights. As such, the court denies Mr. Riccardi's motion to acquit and/or for a new trial on these grounds.

**C. Underlying Illegal Sex Act in 18 U.S.C. § 2422(b)**

Mr. Riccardi argues that the court should enter a judgment of acquittal on Counts III and V because the government failed to prove that he committed the underlying state offense. Section 2422(b) provides that whoever, using means of interstate or foreign commerce, "knowingly persuades, induces, entices or coerces any individual who has not attained the age of 18 years, to engage in...any *sexual activity for which any person can be charged with a criminal offense* ..." shall be guilty of a crime against the United States. 18 U.S.C. § 2422(b) (emphasis added). The government's theory concerning the underlying state crime at trial was that Mr. Riccardi used a telephone in an attempt to persuade, induce, entice or coerce minors to engage in sexually explicit conduct for the purpose of promoting any performance, in violation of K.S.A. § 21–3516.

Mr. Riccardi argues that the underlying Kansas statute criminalizes only public performances and that he only attempted to have minors engage in a private presentation, i.e., spanking themselves within the seclusion of their homes. Indeed, the evidence at trial clearly established that Mr. Riccardi attempted to have the young boys engage in a private, though live, presentation for his sexual gratification. That is, Mr. Riccardi called young high school athletes, posing as a college coach or recruiter. After gaining the child's interest, he would ask a series of questions about the child's commitment to a particular sport and how he was disciplined at home and at school. In the end, Mr. Riccardi would ask the young boys to go to a private room and directed them to spank themselves to demonstrate their commitment to his "program." Mr. Riccardi does not dispute that he requested the boys spank themselves to arouse or gratify his sexual desire or to appeal to his prurient interest. The question is whether such a live presentation falls outside the scope of K.S.A. § 21–3516 because it was not a "public" performance.

■ The Tenth Circuit has clarified that federal courts should interpret "state laws according to state rules of statutory construction." *Citizens for Responsible Gov't State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1190 (10th Cir.

2000) (citing *Phelps v. Hamilton*, 59 F.3d 1058, 1071 n. 23 (10th Cir.1995)). The Kansas Supreme Court has explained that it "is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001) (citing *In re Marriage of Killman*, 264 Kan. 33, 42–43, 955 P.2d 1228 (1998)). "The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted." *Id.* "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Id.* "Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in it." *Id.*

Under Kansas law, sexual exploitation of a child, the underlying state offense in Counts III and V, is a severity level 5, person felony. K.S.A. § 21–3516(c). Sexual exploitation includes "[e]mploying, using, persuading, inducing, enticing or coercing a child under 18 years of age to engage in sexually explicit conduct for the purpose of *promoting* any *performance....* " K.S.A. § 21–3516(a)(1) (emphasis added). The legislature defined "promoting" to include:

> [P]rocuring, selling, providing, lending, mailing, delivering, transferring, transmitting, distributing, circulating, disseminating, *presenting*, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting or advertising: (A) For pecuniary profit; or (B) *with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the offender, the child or another.*

K.S.A. § 21–3516(b)(2). Additionally, the legislature defined "performance" as follows:

> "Performance" means any film, photograph, negative, slide, book, magazine or other printed or visual medium, any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk or any play or other *live presentation.*

K.S.A. § 21–3516(b)(3). The court instructed the jury, based on these definitions, that "promoting" included "presenting with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the offender, the child or another." The court further instructed the jury that a "performance" included "any live presentation, whether visual or aural."

The court does not agree with Mr. Riccardi that the Kansas legislature intended to limit the scope of K.S.A. § 21–3516 to unlawful "public" presentations. The statute prohibits Mr. Riccardi from "[e]mploying, using, persuading, inducing, enticing or coercing a child under 18 years of age to engage in sexually explicit conduct for the purpose of *promoting* any *performance....* " The legislature expressly defined promoting to include "presenting" and "performance" to include any "live presentation." Nothing in the statutory language or implementing definitions supports the limitation Mr. Riccardi advocates.

Mr. Riccardi's arguments to the contrary are unavailing. First, he contends that the plain language of the statute implies a "public" requirement. The legislature defined "performance" to include a live presentation, but did not define "pre-

sentation." Mr. Riccardi, relying on Webster's New Collegiate Dictionary, defines presentation as "the act of presenting," and defines "present," in turn, as "to bring or introduce into the presence of someone, esp: to introduce socially, or to bring (as a play) before the public." Mr. Riccardi suggests that this definition requires that a live presentation be performed in public before it can violate K.S.A. § 21–3516. His own definition, however, suggests a broader meaning. He defines the term as "introducing into the presence of someone." This definition does not mandate a public requirement. While Webster's indicates that one may use this term permissibly in the context of bringing "before the public," such use is merely permissive and does not define the appropriate scope and boundaries of the that term.

Mr. Riccardi also offers multiple excerpts from the legislative history of K.S.A. § 21–3516 to support his interpretation. The court finds this history to be largely uninformative. Mr. Riccardi cites to state House and Senate Judiciary Committee reports discussing K.S.A. § 21–3516 and amendments over time to demonstrate that the legislature was highly concerned about the "public market" for child pornography. The court certainly agrees that the Kansas legislature was concerned and perhaps even primarily motivated by the economic market for child pornography in adopting K.S.A. § 21–3516. This, however, does not suggest that the legislature chose to target only that particular aspect of child exploitation. In fact, a review of the statutory language proves otherwise. Had the legislature intended to limit the scope of the criminal statute to the "public" market for child pornography, it would have limited the definition of "child exploitation" to the definition provided in sub-

section (a)(2), which defines the term to include:

> "[P]ossessing any film, photograph, negative, slide, book, magazine or other printed or visual medium or any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk in which a visual depiction of a child under 18 years of age is shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another . . . ."

K.S.A. § 21–3516(a)(2). This definition of sexual exploitation provides a comprehensive attack on the public market for child pornography. If that were the Legislature's exclusive purpose, it would not have included three other categories of activity that constitute sexual exploitation of a child, including "[e]mploying, using, persuading, inducing, enticing or coercing a child under 18 years of age to engage in sexually explicit conduct for the purpose of promoting *any performance* . . . " K.S.A. § 21–3516(a)(1) (emphasis added).[1] This definition evidences a broader concern for the public welfare of children. The Legislature's use of the phrase "any performance" instead of "public performance" is particularly compelling, as it suggests that it intended to protect children from being exploited by all performances that depict them engaging in sexually explicit conduct.

██ The plain language and structure of K.S.A. § 21–3516 demonstrates that the Kansas Legislature intended the term

---

1. The other categories of sexual exploitation are defined at K.S.A. §§ 21–3516(a)(3) and (4).

"live presentation" to include both public and private performances. Neither the express language of the statute nor the legislative history limits the scope of criminal conduct to "public" acts and the court rejects Mr. Riccardi's request for relief on these grounds.

## D. Statute of Limitations

Mr. Riccardi contends that his convictions on Counts I and II of the superseding indictment are barred by the five-year statute of limitations in 18 U.S.C. § 3282. Mr. Riccardi does not dispute that law enforcement officials found child pornography within his residence, but he suggests that the government's evidence failed to establish that he *knowingly* possessed those materials within the applicable limitations period.

Mr. Riccardi provides no explanation as to why or how the government's evidence was defective. Instead, he simply reasserts the argument made in his motion for judgment of acquittal, wherein he stated that the government "failed to adduce evidence sufficient to demonstrate that the materials underlying the charges set forth in Counts I and II of the Superseding Indictment were knowingly possessed by Defendant during the five years immediately preceding the return of the Indictment in this case." After reviewing the government's evidence at trial, the court cannot agree with Mr. Riccardi's assertion and finds that the government presented evidence from which a rational trier of fact could have concluded that Mr. Riccardi knowingly possessed the photographs within the applicable statute of limitations period.

First, Mr. Riccardi does not dispute that law enforcement agents found Polaroid photographs depicting minors engaged in sexually explicit conduct within a secured footlocker at his residence. Likewise, he does not dispute that the agents seized computer images containing child pornography from his personal computer, which was also located at his residence. In similar contexts, the Tenth Circuit has found such constructive possession sufficient to prove the "knowing possession" element of a crime. In *United States v. Hien Van Tieu*, 279 F.3d 917 (10th Cir. 2002), the court examined whether the government proved that the defendant knowingly possessed a firearm or ammunition in violation of 18 U.S.C. § 922(g)(1). "A conviction under § 922(g)(1) requires the Government to prove (1) knowing possession; (2) by a restricted person; (3) of any firearm or ammunition that has traveled in or affected interstate commerce." *Id.* at 922 (citing *United States v. Heckard*, 238 F.3d 1222, 1228 (10th Cir.2001)). The parties agreed that defendant was a restricted person and that the firearm traveled in interstate commerce, but defendant argued he did not knowingly possess the weapon. *Id.* In affirming defendant's conviction, the Tenth Circuit explained the effect of constructive possession:

> The Government may meet its burden of proof by showing constructive possession; actual possession is not required. To establish constructive possession, the Government must show the defendant knowingly holds the power to exercise dominion or control over the firearm.

*Id.* The court believes that the government may prove knowing possession of child pornography, just as in the case of illegal possession of weapons, by establishing that a defendant constructively possessed the contraband. Indeed, other courts have found that possession of child pornography under 18 U.S.C. § 2252(a)(4)(B) may be actual or constructive. *United States v. Layne*, 43 F.3d 127, 131 (5th Cir.1995) (finding that possession may be actual or constructive); *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir.1991) (same);

*United States v. Tucker*, 150 F.Supp.2d 1263, 1267 (D.Utah 2001) (defendant possessed child pornography when he had the power and ability to exercise dominion and control over it); *see also United States v. Osborne*, 935 F.2d 32, 34 n. 2 (4th Cir.1991) (finding that knowing receipt of child pornography, for purposes of 18 U.S.C. § 2252(a)(2), occurred when videotapes were delivered to defendant's residence and he was in constructive possession of the items). Here, Mr. Riccardi constructively possessed the child pornography offered as evidence at trial. He knowingly held the power and ability to exercise dominion and control over these items as they were located inside of his personal residence. Moreover, the fact that he safely preserved these items inside a locked footlocker and on a computer hard drive further demonstrates constructive possession because Mr. Riccardi had an "appreciable ability to guide the destiny of the [contraband]." *United States v. Culpepper*, 834 F.2d 879, 881 (10th Cir.1987). Mr. Riccardi offered no evidence at trial suggesting that other individuals had access to or control over his residence, his footlocker and/or his personal computer. In fact, one law enforcement official testified that it appeared to him that Mr. Riccardi had exclusive access to the residence. Because law enforcement officials found Mr. Riccardi in constructive possession of these items when they executed the search of his residence in May of 2002, the government's evidence was sufficient to establish knowing possession of the child pornography within the five-year limitations period.

In addition to Mr. Riccardi's constructive possession of the child pornography, the government offered other evidence suggesting that he knowingly possessed these items. With respect to Court I, the government presented evidence, in the form of graphic image files saved on the hard drive of Mr. Riccardi's personal computer. Two of these images depicted minors engaged in sexually explicit conduct. Agent Finch testified that Mr. Riccardi received numerous pornographic image files in a "zip file," which is a compressed file format that permits users to store greater volumes of data. At some point prior to 1999, Mr. Riccardi "unzipped" that file and saved some of the image files to a download directory on his hard drive. On September 19, 1999, Mr. Riccardi upgraded his AOL software. As a result of the upgrade, files saved under the old software were transferred to the new version. When the transfer was complete, Exhibits 9–4 and 9–6 were both saved on the new version of the software, even though the zip files were not transferred with the software upgrade. Moreover, Agent Finch testified that these images were saved to a download directory that Mr. Riccardi created. He explained that when saving an image file, "typically the software that the user is using or interacting with will ask for a location to save it. In this case the files were saved to this AOL downloads slash downloads directory so it would have been—the user would have had to have directed it to that location to have been saved." This evidence suggests that Mr. Riccardi took affirmative steps to preserve the child pornography on his computer and, therefore, knowingly possessed such items within the statute of limitations period.

With respect to the photographs supporting the charges in Count II, the government offered the testimony of the individuals depicted in those Polaroid photographs. Those witnesses testified that Mr. Riccardi actually took the photographs and the evidence suggested that he knew that they were minors at the time. The government also offered evidence that law enforcement officials found these photographs during the execution of the search warrant in 2002. In

particular, the officials found the bulk of these photographs inside of albums that were securely stored in a locked footlocker. Mr. Riccardi's production of the photographs combined with his affirmative steps to securely preserve them sufficiently establishes his knowing possession.

The court finds that a reasonable juror could conclude that this evidence establishes that Mr. Riccardi knowingly possessed the images and photographs supporting the charges in Counts I and II well within the applicable statute of limitations period. As such, the court denies his motion on these grounds.

### E. First Amendment Protection

Mr. Riccardi argues that he is entitled to a judgment of acquittal on Counts III and V because his telephone solicitations were merely indecent, not obscene. As such, he believes the First Amendment protects those communications.

Mr. Riccardi relies on the United States Supreme Court's opinion in *Sable Communications of Calif. v. FCC*, 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). In *Sable Communications*, the court addressed the constitutionality of § 223 of the Communications Act of 1934, which, after 1988 amendments, imposed an outright ban on obscene as well as indecent interstate commercial telephone messages. *Id.* at 117, 109 S.Ct. 2829. In 1983, Sable Communications began offering sexually oriented prerecorded telephone messages ("dial-a-porn") through the Pacific Bell telephone network. *Id.* at 117–18, 109 S.Ct. 2829. Individuals who called the adult message number listened to the prerecorded message for a special fee. *Id.* at 118, 109 S.Ct. 2829. In 1988, Sable Communications brought suit in federal district court seeking declaratory and injunctive relief against enforcement of the recently amended Communications Act. *Id.* The dis-

trict court denied the request for preliminary injunction as to the Act's ban on obscene telephone messages, but issued a preliminary injunction prohibiting enforcement of the Act as to indecent communication. *Id.* at 118–19, 109 S.Ct. 2829.

The Supreme Court affirmed the holding of the district court. First, the Supreme Court recognized that the First Amendment does not protect obscene communications. *Id.* at 124, 109 S.Ct. 2829. As to the attempt to regulate indecent communication, the government argued that the regulations were necessary to protect children from exposure to indecent dial-a-porn messages. *Id.* at 126, 109 S.Ct. 2829. The Supreme Court agreed that the government has a compelling interest in protecting the physical and psychological well-being of minors and that such interest "extends to shielding minors from the influence of literature that is not obscene by adult standards." *Id.* Regulations in furtherance of that interest, however, must withstand constitutional scrutiny: that is, the regulations must be narrowly drawn "to serve those interests without unnecessarily interfering with First Amendment Freedoms." *Id.* The Supreme Court held that the regulation of indecent communications was not carefully tailored to further the government's legitimate interest because it authorized a complete ban on all indecent commercial telephone communications, not just those targeting minors. *Id.* at 127, 109 S.Ct. 2829. The Supreme Court explained that Congress could have adopted less restrictive alternatives that furthered the government's interest, while minimizing the impact on the First Amendment. *Id.* at 130, 109 S.Ct. 2829. By prohibiting all indecent communications, the Act was "another case of burning the house to roast the pig." *Id.* at 131, 109 S.Ct. 2829.

The federal statute (18 U.S.C. § 2422(b)) and the underlying state statute (K.S.A. § 21–3516) the government relied upon in Counts III and V of the superseding indictment distinguish Mr. Riccardi's case from *Sable Communications.* These two statutes are similar to § 223(b) of the Communications Act only in that the government pursues similar interests: protecting minors from sexual exploitation. The two statutes, however, differ significantly from § 223(b) in the means chosen to serve that purpose. Unlike the regulations under the Communications Act, both 18 U.S.C. § 2422(b) and K.S.A. § 21–3516 regulate communications that target minors for sexual exploitation.

For example, the Kansas statute prohibits sexual exploitation of a child, which is defined as "[e]mploying, using, persuading, inducing, enticing or coercing a child under 18 years of age to engage in sexually explicit conduct for the purpose of promoting any performance." K.S.A. § 21–3516(a)(1). Rather than targeting communications that persuade, induce, entice, etc. *any* individual to engage in sexually explicit conduct, the Kansas legislature narrowly tailored the statute to target only communications that solicit minors. Such tailoring clearly distinguishes this statute from § 223(b) of the Communications Act, which regulated all indecent communications whether or not the communications targeted minors.

Similarly, the federal statute supporting the charges in Counts III and V target only communications intended to persuade minors to engage in illegal sex acts. The plain language of 18 U.S.C. § 2422(b) provides that "[w]hoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual *who has not attained the age of 18 years,*

to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both." Again, unlike the regulation in *Sable Communications,* this federal statute targets only speech intending to persuade minors to engage in illegal sex acts. The Sixth Circuit has explained the significance of such narrow tailoring:

> [18 U.S.C. § 2422(b) ] only applies to those who "knowingly" persuade or entice, or attempt to persuade or entice, minors. Thus, it only affects those who intend to target minors: it does not punish those who inadvertently speak with minors or who . . . post messages for all internet users, either adults or children, to seek out and read at their discretion. Any limited or incidental effect on speech does not infringe on any constitutionally protected rights of adults. Put another way, the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts. Defendant's constitutional challenge is without merit.

*United States v. Bailey,* 228 F.3d 637, 639 (6th Cir.2000).

██ Mr. Riccardi's telephone solicitations fall outside of the Supreme Court's holding in *Sable Communications.* As such, the First Amendment does not protect his communications aimed at persuading or enticing minors to engage in illegal sex acts and, therefore, he is not entitled to an order granting judgment of acquittal or a new trial on Counts III and V on this basis.

## II. Additional Grounds for Motion for New Trial and/or Arrest of Judgment

Mr. Riccardi next alleges numerous grounds for a new trial under Fed.

R.Crim.P. 33 or an arrest of judgment under Fed.R.Crim.P. 34. The court finds none of his asserted errors justify relief under the Federal Rules.

## A. Previous Motions and Objections

Mr. Riccardi raises thirteen objections previously raised in pre-trial motions or at trial as grounds for a new trial or an order arresting judgment. Because the court has previously dealt with these objections in Memorandum and Orders or at trial, the court will not thoroughly address them all here.

### 1. Illegal Search of Mr. Riccardi's Trash

Mr. Riccardi contends that law enforcement violated his Fourth Amendment rights when they searched his trash for evidence of crime. On March 25, 2002 Detective John Dickey with the Leawood, Kansas Police Department made arrangements with trash haulers to acquire Mr. Riccardi's trash. According to the testimony of Detective Dickey at the suppression hearing, he acquired Mr. Riccardi's trash only after haulers removed it from the curtilage of defendant's residence. Detective Dickey subsequently searched the trash and discovered several Qwest calling cards that were allegedly used to place sexually explicit phone calls to minors in several states. This evidence was used to secure a search warrant of Mr. Riccardi's residence.

In determining whether an officer's conduct violated the Fourth Amendment, the Tenth Circuit first considers whether the trash bags were within the curtilage of the home. If they were not, then no Fourth Amendment violation occurred. *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir.1999). "Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80

L.Ed.2d 214 (1984). To determine whether an area falls within the home's curtilage, the Tenth Circuit considers four factors: "(1) the proximity of the area to the home; (2) inclusion of the area within an enclosure surrounding the home; (3) the nature of the uses of the area; and (4) steps taken by the resident to protect the area from observation by persons passing by." *Long*, 176 F.3d at 1308 (citing *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)).

■ Based on the uncontroverted testimony of Detective Dickey, the trash was outside the curtilage of defendant's residence. The Supreme Court addressed nearly identical facts in *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). In *Greenwood*, the defendant had placed his trash at curbside for collection. A trash collector picked up the trash and turned the bags over to the police. *Id.* at 37, 108 S.Ct. 1625. A search of the bags revealed evidence of drug activity, which officers used to secure a warrant to search the defendant's home. *Id.* at 38, 108 S.Ct. 1625. In affirming the constitutionality of the search, the court explained:

> Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded."

*Id.* at 40–41, 108 S.Ct. 1625.

The circumstances surrounding the search of Mr. Riccardi's garbage, based

upon the uncontroverted testimony of Detective Dickey, is identical to the search in *Greenwood.* As such, he is not entitled to a new trial and/or arrest of judgment on these grounds.

### 2. Miscellaneous Challenges Resolved in the Court's October 25, 2002 Memorandum and Order (Doc. 76)

Mr. Riccardi contends that he is entitled to an arrest of judgment or new trial on the following grounds: (1) Count II is invalid because it is based on purely intrastate possession of child pornography in violation of the Commerce Clause; (2) Counts III and V of the superseding indictment are defective because they failed to identify, specifically, the underlying state statute supporting a conviction under 18 U.S.C. § 2422(b); (3) Counts I and II are invalid because they are founded on the unconstitutionally vague prohibition on "sexually explicit conduct" contained in 18 U.S.C. § 2252(a)(4)(B); (4) Count II is invalid because the First and Fourteenth Amendments prohibit criminalizing mere private possession of obscene materials; and (5) Counts III and V are invalid because they are duplicitous.

The court thoroughly addressed these arguments in another October 25, 2002 Memorandum & Order (Doc. 76). Mr. Riccardi has raised no new arguments or issues that would require the court to alter or modify that opinion. He has filed a notification of supplemental authority in support of the motion for a new trial, supporting his Commerce Clause challenge by reference to the Ninth Circuit's recent opinion in *United States v. McCoy*, 323 F.3d 1114 (9th Cir.2003). In *McCoy*, the defendant pled guilty to possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). *Id.* at 1115. Sometime in April of 2000, Rhonda McCoy and her minor daughter, partially unclothed, posed side by side for the camera, with their genital areas exposed. *Id.* Rhonda's husband captured the image with a camera. *Id.* Two months later, Ms. McCoy left five rolls of film with the Navy Fleet Exchange for processing. *Id.* During the course of processing that film, a loss prevention manager for the Exchange notified authorities about the photograph. *Id.*

On appeal, the Ninth Circuit addressed whether the federal government could punish Ms. McCoy "for possessing the picture or, more specifically, whether § 2252(a)(4)(B) is unconstitutional under the Commerce Clause, on its face or as applied." *Id.* at 1117. Ms. McCoy argued "that the simple intrastate possession of a home-produced sexually explicit picture of a child, with no intent to distribute interstate or by commercial means, is not properly characterized as commercial or economic activity." *Id.* at 1120. The Ninth Circuit agreed, finding that such possession could no longer be upheld under the aggregation theory in *Wickard v. Filburn*, 317 U.S. 111, 127–28, 63 S.Ct. 82, 87 L.Ed. 122 (1942), because the United States Supreme Court had limited that doctrine to regulation of activity the economic nature of which was obvious. *Id.* (citing *United States v. Morrison*, 529 U.S. 598, 610, 120 S.Ct. 1740, 146 L.Ed.2d 658). The court concluded that "home-grown child pornography not intended for distribution or exchange is 'not in any sense of the phrase, economic activity.'" *Id.* at 1123 (quoting *Morrison*, 529 U.S. at 613, 120 S.Ct. 1740).

As Judge Trott noted in his dissenting opinion, however, the Fifth Circuit has held that the aggregation theory in *Wickard* still applies to home-grown intrastate possession of child pornography, even after the United States Supreme Court's opinions in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and *Morrison.* *Id.* at 1129–30 (citing *United States v. Kallestad*, 236 F.3d

225 (5th Cir.2000)). Similarly, this court explained in its October 25, 2002 opinion that the Fourth Circuit has joined the Fifth Circuit in the view that by choosing to directly regulate the interstate market for which child pornography exists, this case is distinguishable from *Lopez* and *Morrison*. *United States v. Buculei,* 262 F.3d 322, 328–30 (4th Cir.2001) (rejecting Commerce Clause challenge to 18 U.S.C. § 2251(a)). Also, in that order, the court explained that it believed the Tenth Circuit would join the First, Third, Fourth, Fifth and Seventh Circuits in finding that intrastate possession of child pornography, in the aggregate, is substantially connected to interstate commerce, based on the Tenth Circuit's application of the aggregation theory to purely intrastate possession of illegal weapons post-*Lopez* and post-*Morrison*. The Ninth Circuit's non-unanimous panel opinion does not alter the court's prior analysis.

Moreover, this case is distinguishable from *McCoy* on the facts. In *McCoy,* the defendant took one family photograph that depicted her and her minor daughter in a sexually explicit pose. The Ninth Circuit explained that "[w]hile McCoy may have shown poor judgment as a parent, and likely requires substance abuse rehabilitation, no one claims that she is or is likely to become a child pornographer." *McCoy,* 323 F.3d at 1132. As such, the court concluded that "[t]he kind of demonstrable and substantial relationship required between intrastate activity and interstate commerce is utterly lacking here." *Id.*

 Here, on the other hand, the jury unanimously found that Mr. Riccardi possessed 40 separate photographs depicting minors, to which he had no familial relationship, engaged in sexually explicit conduct. In addition to those photographs, the government presented evidence that Mr. Riccardi possessed hundreds of photographs best described as child erotica. As such, his intrastate possession of child pornography had a far more substantial and demonstrable impact on the interstate market than did the single photograph in *McCoy,* rendering the aggregate theory more applicable given the facts of this case.

**3. Search Warrant Challenges Resolved in the Court's October 25, 2002 Memorandum & Order (Doc. 73)**

Mr. Riccardi renews four objections to the search of his residence and computer, which he originally raised in his motion to suppress. Again, the court thoroughly addressed these arguments in an October 25, 2002 Memorandum & Order (Doc. 73). Mr. Riccardi has raised no new arguments or issues that would require the court to alter or modify that opinion. As such, the court denies his request for relief on these grounds.

**4. Severance of the Possession Counts from the Telephone Solicitation Counts**

Mr. Riccardi renews his severance argument, originally raised in his motion to sever the counts (Doc. 26). Mr. Riccardi argues that the offense of possession of child pornography cannot be joined under Fed.R.Crim.P. 8(a) with soliciting a minor to engage in sexually explicit conduct because the offenses are completely unrelated. Even if the offenses are properly joined, Mr. Riccardi believes the court should have severed the counts under Fed.R.Crim.P. 14 to avoid prejudice. The government asserts that the charges are similar in nature and are part of a long-standing pattern of criminal activity by the defendant.

**a. Joinder under Rule 8(a)**

 "Joinder of offenses under Rule 8(a) is appropriate if the offenses are

of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Rule 8 is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Price,* 265 F.3d 1097, 1105 (10th Cir.2001) (emphasis added). On its face, joinder appears proper because the possession of child pornography counts and the attempted persuasion of a minor to engage in an illegal sex act counts are similar in "character."

In *United States v. Hersh,* 297 F.3d 1233 (11th Cir.2002), the defendant alleged that the offense of possession of child pornography was not properly joined with the offense of transporting a minor to engage in sexual activity. The Eleventh Circuit, however, found that such counts were of similar character for purposes of Rule 8(a):

> [B]oth sets of counts are "similar" in that they reflect Hersh's repeated participation in the sexual exploitation of minors. Counts 1, 2 and 10 charge Hersh with traveling to and transporting a minor from Honduras for the specific purpose of engaging in sexual activity with a minor; Counts 6–9 charge Hersh with receiving and possessing visual depictions of minors engaged in sexual activity. Collectively, the counts charge Hersh with child molestation and child pornography—which plainly represent acts of "similar character" involving the extraordinary mistreatment of children.

297 F.3d at 1242. The Eleventh Circuit further noted that Congress has acknowledged a strong link between pedophilic behavior and child pornography, further justifying the joinder of the counts. *Id.* (citing Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, § 121, 110 Stat. 3009, 3009–26–27 (1996)).

■ The Eleventh Circuit's analysis in *Hersh* is instructive. Both Mr. Hersh and Mr. Riccardi were charged with possession of child pornography. In Mr. Riccardi's case this offense was joined with the offense of attempting to induce, persuade, entice or coerce a minor by phone to engage in an illegal sex act in violation of 18 U.S.C. § 2422(b), and in Mr. Hersh's case the possession charge was joined with the offense of transporting a minor in interstate commerce to engage in sex. While the joined offenses differ slightly, the underlying culpable conduct is the same: an intent to engage in sexual activity with a child. Because these offenses are similar in character, joinder is proper under Rule 8(a) so long as the defendant will not suffer prejudice.

### b. Severance under Rule 14

■ Even if offenses are properly joined under 8(a) a court may sever the counts if necessary to prevent prejudice to defendant under Federal Rule of Criminal Procedure 14. *United States v. Jones,* 213 F.3d 1253, 1260 (10th Cir.2000). "In determining the merits of a motion for severance, the court must weigh the prejudice to a particular defendant caused by the joinder against the important considerations of economy and expedition in judicial interests." *United States v. Wright,* 2001 WL 523394, at *1 (D.Kan. Apr.26, 2001) (quoting *United States v. Mabry,* 809 F.2d 671, 681 (10th Cir.), cert. denied, 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164, and overruled on other grounds, *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)).

■ Generally, the courts consider several factors in determining the validity of a motion to sever. First, the courts examine whether the joinder of the offenses would cause the jury to hear confusing, cumulative or inflammatory evidence. In *Lucero v. Kerby,* 133 F.3d 1299 (10th Cir.1998), the Tenth Circuit observed in

dicta that a "jury may...confuse or cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find." *Id.* at 1314. When joinder of offenses is based upon their "same or similar character," the prejudice to the defendant is more likely since proof of one crime may tend to corroborate the commission of the other crime in violation of the evidentiary rules against evidence of a general criminal disposition or propensity to commit crime. *United States v. Muniz*, 1 F.3d 1018, 1023 (10th Cir.1993). The district court, however, is not required to sever counts simply because the cumulative effect of evidence of similar misconduct might potentially prejudice the defendant. *United States v. Cox*, 934 F.2d 1114, 1120 (10th Cir.1991).

In *Hersh*, the defendant argued that the risk of jury confusion from complex testimony regarding computers and by the prejudice that spilled over from the emotionally charged and inflammatory evidence of child pornography justified severance under Rule 14. 297 F.3d at 1243. The Eleventh Circuit rejected both positions, explaining:

> [A] reasonable jury undoubtedly would have found both the evidence of Hersh's child molestation and the evidence of Hersh's child pornography very inflammatory, and Hersh has offered no support for the contention that the evidence of child pornography was somehow more prejudicial or inflammatory than the charge that he repeatedly molested young, poverty-stricken boys from Third World countries. Nor has he offered support for the contention that the computer evidence related to the child pornography count actually confused the jury.

*Id.* Similarly, Mr. Riccardi has not established that the government's evidence demonstrating that he attempted to persuade minors to engage in an illegal sex act was more prejudicial or inflammatory than the evidence that he possessed child pornography, much of which he produced in the basement of his residence. Moreover, it does not appear that the evidence supporting these offenses was so complex or intertwined that it would confuse the jury or encourage members to cumulate the evidence. As such, joinder of the offenses did not cause the jury to hear cumulative, inflammatory or confusing evidence so as to justify severance under Rule 14.

Second, a court will consider the possible effect of joinder on a defendant's constitutional right not to take the witness stand. A defendant who wishes to remain silent on some counts and testify on other counts is not entitled to severance under Rule 14 without "a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *United States v. Valentine*, 706 F.2d 282, 291 (10th Cir.1983). "In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying." *Id.* Mr. Riccardi did not argue, in his original motion to sever or in this present motion, that he had important testimony regarding either the charges under 18 U.S.C. § 2252(a)(4)(B) or 18 U.S.C. § 2422(b) and a strong need to refrain from testifying on the other charge. As such, severance of the counts is not justified on this ground.

Third, a court will consider whether evidence of the severed counts would be

otherwise admissible if the counts were not joined. Generally, severance is not required when evidence pertaining to the severed count would be otherwise admissible under 404(b). *United States v. Hollis,* 971 F.2d 1441, 1457 (10th Cir.1992) (affirming district court order denying severance under Rule 14, in part, because had separate trials been granted, the evidence of similar conduct would likely have been admissible anyway under Fed.R.Evid. 404(b)); *United States v. Walker,* 104 F.3d 368, 1996 WL 731631, at *5 (10th Cir. Dec.20, 1996)(finding severance of tampering and drug charge unnecessary because evidence of defendant's witness tampering would likely be admissible at trial to show his guilty knowledge on the drug charge, while evidence of the drug charge would likely be admissible to show his motive for engaging in witness tampering).

 Had the court severed the counts in this case, the child pornography and other photographs Mr. Riccardi took of minors would have been admissible, under Federal Rule of Evidence 404(b), to prove Mr. Riccardi's motive and intent in calling young high school male athletes, talking to them about discipline, and requesting that they spank themselves. As explained above, in Counts III and V, the government charged Mr. Riccardi with attempting to use a telephone to knowingly persuade, induce, entice, or coerce a minor to engage in . . . any sexual activity for which any person can be charged with a criminal offense in violation of 18 U.S.C. § 2422. The government alleged that the underlying state crime "for which any person can be charged with a criminal offense" was K.S.A. § 21–3516. That state criminal statute prohibits employing, using, persuading, inducing, enticing or coercing a minor to engage in *sexually explicit conduct* for the purpose of *promoting* any performance. K.S.A. § 21–3516. Sexually explicit conduct is defined to include "sadomasochistic abuse for the purpose of sexu-

al stimulation." K.S.A. § 21–3516(b)(1). "Promoting" is defined to include presenting with the intent to "arouse or gratify the sexual desire or appeal to the prurient interest of the offender . . . ." K.S.A. § 21–3516(b)(2).

Thus, the government had the burden of proving, under Counts III and V, that Mr. Riccardi called the high school athletes in an attempt to have them engage in sadomasochistic abuse for the purpose of sexual stimulation. That is, the government had to prove that Mr. Riccardi had a sexual motive for placing those telephone calls. At trial, the government successfully carried its burden by relying on evidence, other than the photographs of the minors, to prove Mr. Riccardi's motive. However, had the counts been severed, the child pornography, child erotica and other photos of young boys would have been admissible under Rule 404(b) because it had the tendency to prove that Mr. Riccardi was interested in young males, particularly in the context of discipline and sadism, and that these interests were sexually motivated.

 Finally, even if joined counts could lead to cumulative, confusing or inflammatory evidence, the court examines whether a limiting instruction can cure possible prejudice. *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (noting trial court's use of limiting instructions will often serve to cure any risk of prejudice caused by a joint trial); *United States v. Emmons,* 24 F.3d 1210, 1219 (10th Cir. 1994) (concluding jury instruction eliminated any alleged spillover effect of disproportionate evidence presented against co-defendant). For example, in *Hersh,* the defendant argued that the district court's limiting instructions did not cure the spillover prejudice. 97 F.3d at 1243. The Eleventh Circuit found, however, that

the district court's repeated efforts to instruct the jury sufficiently protected against prejudice. In particular, the court instructed the jury that the evidence related to the child pornography counts could be considered only insofar as it related to those counts; in describing each of the ten counts, the court reiterated that the jury could find guilt on a particular count only if the government met all of the elements for that count; and the court instructed the jury to ignore evidence of Hersh's character in reaching a verdict. In light of the many steps that the district court took to minimize prejudice, and in light of Hersh's failure to show any actual prejudice or jury confusion, the court concluded that the jury was capable of following the court's limiting instructions and appraising the independent evidence against the defendant on each count. 297 F.3d at 1244.

 Here, the court repeatedly instructed the jury that it could not consider evidence relevant to the possession of child pornography charges in Counts I and II in evaluating whether Mr. Riccardi committed the acts charged in Counts III and V (violations of 18 U.S.C. § 2422(b)). Before the government's material witnesses took the stand and just after critical government exhibits were admitted, the court instructed the jury as to which counts the evidence was relevant and whether the testimony or exhibits were offered as direct evidence or for 404(b) purposes. Moreover, in Instruction No. 26, the court instructed the jury that:

> A separate crime is charged in each count of the Indictment. Each charge, and the evidence pertaining to it, should be considered separately by the jury. The fact that you may find the defendant guilty or not guilty as to any one of the counts should not control your verdict as to any other count.

Finally, the court, at Mr. Riccardi's request, prepared a special verdict form that required the jurors to identify which photographs, if any, they unanimously found beyond a reasonable doubt supported a conviction under Counts I and II. This verdict form further clarified that the evidence tending to prove that Mr. Riccardi solicited young men on the telephone could not be considered to support a conviction for possession of child pornography. As in *Hersh*, these limiting instructions minimized the risk of prejudice to Mr. Riccardi.

Based on the above analysis, the court finds that Mr. Riccardi is not entitled to a new trial and/or an order arresting judgment based on the trial court's decision to join Counts I and II with Counts III and V.

**5. Voice Identification**

Mr. Riccardi renews his objection to the victims' identification of his voice. Mr. Riccardi argues that law enforcement officials employed unduly suggestive identification procedures that violated his right to due process under the Fifth and Fourteenth Amendments. The court thoroughly addressed this argument in an October 25, 2002 Memorandum & Order (Doc. 74). Mr. Riccardi raises no new arguments or issues that would cause the court to alter or amend that opinion. As such, the court denies Mr. Riccardi's request for a new trial or an order arresting judgment on these grounds.

**6. Admission of Non–Sexually Explicit Photographs Under Rule 404(b)**

During trial, the court admitted numerous photographs that depicted minors in non-sexually explicit poses for 404(b) purposes. Some of these photographs depicted minors in ordinary poses and others could be classified as child erotica (though not sufficient to constitute child pornogra-

phy). Mr. Riccardi believes that these photographs were irrelevant and unduly prejudicial.[2]

■ The photographs, however, were relevant. Law enforcement officials found most of these photographs inside of albums that Mr. Riccardi had neatly arranged. The quantity of child erotica seized, and the manner in which it was organized, is probative of Mr. Riccardi's knowledge that child pornography was located within his residence. In *United States v. Caldwell*, 181 F.3d 104, 1999 WL 238655 (6th Cir. Apr.13, 1999), for example, the defendant argued that the trial court erred in admitting adult pornography and child erotica that was intermingled with the defendant's child pornography. "The child erotica was literally intermingled with child pornography in a small room containing a 'small pickup load' of material that was kept 'neat and orderly.'" 1999 WL 238655, at *7. The Sixth Circuit explained the relevance of these other photographs:

> Especially given Caldwell's defense of lack of knowledge of the presence of many of the items, the physical evidence conveys a unique context to the jury. The jury is entitled to know the "setting" of a case. It cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge. Any error by the district court is harmless because the child erotica could properly enter under Fed. R.Evid. 404(b) as evidence of oth-

er...wrongs or acts showing knowledge or intent. Caldwell defended the charges by disclaiming knowledge of the presence of child pornography. The child erotica is probative of knowledge for two reasons. First, the more child pornography and child erotica that was present, the more likely Caldwell had knowledge that his stash contained more than the adult pornography he claimed was the extent of his awareness. Second, as Detective Scott testified, investigators often look for child erotica as an indicator of the presence of child pornography: learning that Caldwell acquired and displayed child erotica increases the probability that he enjoyed child erotica, which makes it more likely that he enjoyed child pornography, which makes it more likely that he knowingly possessed and distributed child pornography. Thus, the government may introduce "other acts" evidence under Rule 404(b): The rule might be stated as follows: where there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b).

*Id.* In Mr. Riccardi's case, law enforcement officials seized hundreds of Polaroid photographs of young boys in various stages of dress and arousal. Hundreds of these photographs were neatly arranged in

---

**2.** To the extent that Mr. Riccardi is arguing that the court admitted photographs as direct evidence of the charges in Count II, when in fact those photographs did not depict minors engaged in sexually explicit conduct, the court thoroughly addressed these issues during the limine conference. During that conference the court examined each and every photograph and determined which ones were admissible as direct evidence, admissible un-

der Rule 404(b), or inadmissible. In reaching this decision, the court applied the *Dost* factors to determine if the photographs depicted individuals engaged in sexually explicit conduct. *United States v. Wolf*, 890 F.2d 241, 244 (10th Cir.1989) (identifying *Dost* factors). Mr. Riccardi has raised no new issues or arguments that would cause this court to reexamine its findings.

photo albums. Generally, the albums were arranged so that the first several photographs would depict a young boy, fully clothed. As the album progressed, however, the photographs depicted the child with less clothing and in more suggestive poses. In the end, the photographs often depicted the child fully erect and in sexually suggestive positions. Law enforcement officials found other loose photographs near a night stand in one of Mr. Riccardi's bedrooms. As in *Caldwell,* these photographs are probative of Mr. Riccardi's knowledge and tend to prove lack of mistake. Additionally, because the non-explicit photographs depicted the same children depicted in the pornographic images, those photographs were relevant to the identity of the models.[3]

 The court also rejects Mr. Riccardi's claim that the non-sexually explicit photographs were unduly prejudicial. He offers no explanation or showing of prejudice. Moreover, the court took painstaking efforts to minimize the risk of any prejudice by carefully instructing the jury. The court, on several occasions, explained to the jury which photographs and images could be considered as direct evidence of the charges in Counts I and II and those which could be considered only for 404(b) purposes. Near the close of the government's evidence, the court went through every single photograph and image in the government's exhibits and explained which ones were offered as direct evidence of the charges in Count I, which ones were offered as direct evidence of the charges in Count II, and which ones were offered for 404(b) purposes. Additionally, the court's special verdict form further clarified which photographs and images the jurors could validly consider as direct evidence of the

charges in Counts I and II. The court must "presume the jury followed these instructions." *Hooper v. Mullin,* 314 F.3d 1162, 1173 (10th Cir.2002).

Based on the above analysis, the court concludes that the admission of non-sexually explicit photographs was relevant for Rule 404(b) purposes and the court's limiting instructions prevented the risk of undue prejudice.

**B. Defendant's Jury Instructions**

Mr. Riccardi renews his proposed jury instructions A, B, C, D & E. He believes that the court's refusal to give such instructions to the jury constitutes error requiring an arrest of judgment and/or a new trial. The court thoroughly examined these proposed instructions and finds that Mr. Riccardi suffered no harm or prejudice as a result of the court's refusal to incorporate them.

**C. Testimony of Agent Finch**

Mr. Riccardi contends that the government elicited testimony from Agent Finch that violated the court's limine ruling. As such, he believes he is entitled to a new trial or an order arresting judgment on Count I.

 During trial, the court ruled that Agent Finch could not testify that the title of one of the .jpg image files, named "11suck15," suggested that the individuals depicted were minors. During the government's direct examination, however, the following communication transpired:

Q And then it also has a tag line that is attached to that that says 11 suck 15–jpg can you explain that to me?

---

**3.** Although Mr. Riccardi possessed a number of photographs of other individuals, the court only admitted into evidence photographs of individuals concerning whom evidence was

presented that the were minors at the time the photographs were taken and that Mr. Riccardi was aware of that fact.

A Yes that is the file name or individual name that was given to that particular picture file. Also up above four lines you see the file name by itself and anyone the dates and times associated again with the dates created last date written last date accessed.

Q Okay. And is it your experience that the title of an image usually reflects the subject matter?

A Quite often we do see that.

Q And why is that?

A Often—

MR. JOHNSTON: Objection, your Honor may [we] approach[?]

THE COURT: I'm going to sustain that I think that goes into more than what was previously disclosed.

MR. JOHNSTON: Move to strike that from the record, your Honor.

THE COURT: Sustained.

Mr. Riccardi believes that despite the court's ruling to strike Mr. Finch's testimony from the record, the testimony was so prejudicial that the court's admonition could not cure the prejudice. The court disagrees. Agent Finch did not clearly state that the title proved the depicted individuals were under the age of 18 years. Moreover, the jury retained the images in question during deliberations and had ample opportunity to view the individuals depicted therein to determine whether or not they were minors. Because the court had previously ruled that a reasonable juror could have found that these individuals were minors and that expert testimony was not necessary to determine the age issue, the jury was fully capable of reaching an independent decision as to the age of the individuals depicted in the images. As such, the court finds that Agent Finch's testimony, which the court properly struck, was not so unduly prejudicial that it entitles Mr. Riccardi to a new trial and/or an order arresting judgment.

## D. Law Enforcement Background Testimony as Hearsay

In his supplemental briefing, Mr. Riccardi argues that "on numerous occasions during trial, over Defendant's objection, law enforcement witnesses and so-called 'case agents' were permitted to testify concerning 'background information' or information that explains the 'course of the investigation.'" Mr. Riccardi further states that in providing this "background" testimony, law enforcement witnesses described historical aspects of the case, via hearsay statements in the form of complaints and reports, to describe why they took certain investigative steps. He believes this evidence should have been excluded.

Mr. Riccardi fails to identify or analyze any particular testimony in the record to support his argument. Instead, he generally alleges that the court should not have allowed this background testimony. As such, the court is reluctant to scour the voluminous trial record to identify the sources of Mr. Riccardi's categorical attack. Even so, the court finds that his argument fails on its merits.

The Tenth Circuit, however, has held that "out of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken." *United States v. Freeman,* 816 F.2d 558, 563 (10th Cir.1987). Here, the officers' testimony regarding background investigatory information was not offered to prove the truth of the matter asserted, but instead, to explain how officers became involved in this case and why they took certain investigatory steps. For example, the government asked Detective Dickey how he became involved in the investigation and he testified that he received a complaint from a third party. Mr. Riccardi objected to the question on

the basis of hearsay. The court overruled the objection explaining that:

> [A]s long as you don't elaborate on any details, if you indicate that he received a telephone call and don't repeat what somebody told him, that's not hearsay; that's simply indicating that he got something that triggered an investigation. But I don't want to use that as a vehicle to bring in the substance of what conversations may have been about, but you can get the witness to say how he started investigating.

The court consistently limited the scope of such questioning to investigatory background information. For example, when the government's line of questioning, during the direct examination of Detective Heidi Morgan, began to stray beyond the limited purpose of explaining why she undertook certain investigatory steps and into the truth of the matter asserted by third parties, the court required the government to rephrase. As such the court finds that the government's use of this type of officer testimony was neither extensive nor prejudicial so as to justify its exclusion. *See United States v. Cass*, 127 F.3d 1218, 1222–23 (10th Cir.1997) (finding that court erred in admitting scores of prejudicial out-of-court statements without any limiting instructions).

The court finds that the government offered the out of court statements through the testimony of the Detectives to explain why they conducted their investigation. As such, those statements are not hearsay under Fed.R.Evid. 801(c) and Mr. Riccardi is not entitled to a new trial and/or an order arresting judgment on these grounds.

### CONCLUSION

In the end, Mr. Riccardi has failed to raise any alleged defect that would entitle him to his requested relief. Specifically, he is not entitled to a judgment of acquittal under Rule 29 because a reasonable jury could have found Mr. Riccardi guilty, beyond a reasonable doubt, on Counts I, II, III and V of the superseding indictment. He is not entitled to a new trial under Rule 33 because none of his arguments establishes that the interests of justice require such relief. He is not entitled to an order arresting judgment under Rule 34 because he failed to demonstrate that the indictment failed to charge an offense or that the court lacked jurisdiction over charged offenses.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Riccardi's Motion for Judgment of Acquittal and/or New Trial (Doc. 131) is denied.