**2017 UT App 31**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
WILLIAM TIRADO,
Appellant.

Opinion
No. 20140967-CA
Filed February 16, 2017

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 121901668

Margaret P. Lindsay and Douglas J. Thompson,
Attorneys for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES KATE A. TOOMEY and JILL M. POHLMAN concurred.

CHRISTIANSEN, Judge:

¶1      William Tirado (Defendant) challenges his conviction on
one count of arranging the distribution of a controlled substance,
a second degree felony.[1] Specifically, he contends that he
received constitutionally ineffective assistance of counsel

---

1. The cover of Defendant's brief refers only to this charge but
the statement-of-the-case section suggests Defendant is also
challenging his conviction of one count of possession of drug
paraphernalia, a class A misdemeanor. Given our resolution of
Defendant's rule 23B motion, we need not address this
discrepancy.

because his attorney labored under a conflict of interest arising from the concurrent representation of Defendant's cousin (Cousin) on related charges. Defendant seeks (1) reversal of his conviction(s) and remand for a new trial or (2) remand for an evidentiary hearing pursuant to rule 23B of the Utah Rules of Appellate Procedure. We remand for a limited evidentiary hearing.

BACKGROUND

¶2      On appeal from a jury verdict, we view the evidence and all reasonable inferences in the light most favorable to that verdict and recite the facts accordingly; however, we also discuss conflicting evidence as necessary to understand the issues raised on appeal. *State v. Dozah*, 2016 UT App 13, ¶ 2, 368 P.3d 863.

¶3      A confidential informant approached his police contact (Officer), saying that he had arranged to purchase approximately 7 grams of methamphetamine from Defendant for $440. Officer set up a sting operation to catch those involved.

¶4      Officer drove past Defendant's house and saw him standing out front with Cousin. Officer recognized Cousin as someone with whom he "had prior dealings" for drug activities. Officer parked around the corner and had the informant call Defendant. The informant asked Defendant whether "he had it" and then confirmed "four-four-zero." Although there was no specific mention of drugs, Officer testified at trial that such obfuscations were a normal part of drug transactions. Indeed, while testifying at trial, the informant stated that asking whether Defendant "had it" meant asking "if he had the dope, if he had it on him."

¶5      The informant then told Defendant to meet him near a library. Officer searched the informant before giving him cash to make the deal and fitting him with an audio recording device.

Officer instructed the informant not to cross the street "for his and for officer safety." The informant then walked down the street and stopped at a corner across the street from Defendant, who asked if the informant had the money. After the informant replied affirmatively, Defendant stated that "my friend's already left" or "they've already left." Due to Officer's instruction not to cross the street, the informant and Defendant "held at their corners" and "were mostly conversing back and forth across the street, mostly trying to get one another to cross the street to meet." Ultimately, the two did not have a face-to-face meeting, no drug transaction took place, and the informant just walked away.

¶6    Officer then arrested Cousin, apparently because Cousin was already wanted on other drug charges. Cousin had 2.1 grams of methamphetamine on his person—less than half of the 7 grams the informant had agreed to buy from Defendant. Cousin stated in his police interview that "if he needed to sell [methamphetamine], he would sell from that specific amount." At Defendant's trial, Officer testified that, in previous sting operations, Officer himself had purchased drugs from Cousin. Officer further testified that "from my knowledge of [Cousin], he deals directly to his people" and did not use an intermediary.

¶7    Officer also took Defendant into custody, but found no drugs or paraphernalia on his person. While Defendant was in custody, other police officers obtained permission from Defendant's fiancée and roommate to search his home. The search turned up drug paraphernalia—pipes, baggies, and scales—that Defendant later admitted were "all his." Defendant was charged by information with possession of drug paraphernalia; after he pled not guilty to that charge, the State amended the information to add the felony charge of arranging the distribution of a controlled substance.

¶8    Defendant and Cousin were represented by the same appointed counsel (Attorney) in their separate cases. Cousin pled guilty to amended charges stemming from his involvement

in this case. At Defendant's subsequent trial, Attorney did not call Cousin as a witness and did not challenge Cousin's out-of-court statements that were admitted as evidence against Defendant. The jury returned guilty verdicts on both counts and Defendant timely appealed.

## ISSUE AND STANDARD OF REVIEW

¶9    Defendant contends that he received constitutionally ineffective assistance of counsel because Attorney "labor[ed] under an actual conflict of interest which adversely affected counsel's performance." He seeks reversal of his conviction or, alternatively, a remand to the district court to conduct an evidentiary hearing to supplement the record regarding this claim.

¶10    When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must determine whether the defendant was deprived of the effective assistance of counsel as a matter of law. *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587. Similarly, because a motion seeking a rule 23B remand is necessarily brought for the first time on appeal, no standard of review applies.

## ANALYSIS

¶11    Defendant contends that Attorney's representation of both Defendant and Cousin amounted to a conflict of interest, and that the conflict of interest caused Attorney's representation of Defendant to fall below the constitutionally mandated level. Specifically, Defendant argues that Attorney's duties of loyalty to both Defendant and Cousin led to "a significant risk that the representation of one or more clients [would] be materially limited by the lawyer's responsibilities to another client." *See* Utah R. Prof'l Conduct 1.7(a)(2).

¶12 Defendant notes that, by the time of Defendant's trial, Cousin had pled guilty to attempted possession of a controlled substance and had been sentenced.[2] Defendant points to the fact that the State's introduction of "evidence of [Cousin's] crime, his statements, [and] his criminal history . . . was admitted without objection or challenge from the defense" and argues that "this evidence was used by the State to bolster the otherwise unsupported claims of the paid confidential informant." Defendant asserts that Attorney's decision not to challenge this evidence was the result of Attorney being "forced to choose to compromise [Defendant's] interests in challenging the State's evidence . . . , or to compromise [Cousin's] interest in keeping his confidential communications private, in maintaining the lawyer/client relationship and loyalty, and in keeping in the good graces of the State." Essentially, Defendant claims that Attorney was unable to wholeheartedly and zealously represent him because Attorney was worried about compromising Cousin's attorney–client confidences or jeopardizing Cousin's status with the State or the Board of Pardons and Parole.[3]

---

2. Defendant highlights Cousin's affidavit submitted in support of Defendant's rule 23B motion, in which Cousin stated that before entering his plea, "I was also defending myself in several other cases. [Attorney] was also appointed to represent me in those cases." The State responds that the existence and timing of those other cases is purely speculative due to Defendant's failure to include any identifying information about them. We need not resolve this issue, because our decision to remand is based on Attorney's representation of Cousin in his attempted-possession case filed contemporaneously with Defendant's case.

3. We note the wide scope of information that the Board of Pardons and Parole is entitled to rely upon in its parole decisions. *See Northern v. Barnes*, 825 P.2d 696, 699 (Utah Ct. App. 1992) (noting that the Board of Pardons had the discretion to rely

(continued…)

¶13 "To succeed on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the defendant was prejudiced thereby." *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Where trial counsel's alleged ineffectiveness caused or exacerbated record deficiencies, defendants . . . have an appropriate procedural tool for remedying those deficiencies." *State v. Litherland*, 2000 UT 76, ¶ 16, 12 P.3d 92. That tool is rule 23B of the Utah Rules of Appellate Procedure. *Id.* ¶¶ 13–15. Rule 23B allows an appellant to make a motion to "remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel." Utah R. App. P. 23B(a). However, "[t]he motion shall be available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.*

¶14 Generally, a defendant's motion seeking rule 23B remand must meet several requirements: (1) it must be supported by affidavits alleging facts outside the existing record, (2) the alleged facts must be non-speculative, and (3) the alleged facts, if true, must establish both elements of a traditional ineffective-assistance claim, i.e., counsel's deficient performance and resulting prejudice. *State v. Griffin*, 2015 UT 18, ¶¶ 18–20. But where a defendant's ineffective-assistance claim is based on trial counsel's alleged conflict of interest, the third requirement must be modified. Rather than establish deficient performance and

---

(…continued)
on information adduced at a hearing eight years after sentencing and that the exercise of such discretion is "precisely the kind[] of issue[] that [is] not subject to judicial review"); *see also Padilla v. Board of Pardons & Parole*, 2016 UT App 150, ¶ 6, 380 P.3d 1 (per curiam).

resulting prejudice, the defendant must instead show that trial counsel was subject to a conflict of interest and that the conflict of interest adversely "affected the adequacy of his representation." *See Mickens v. Taylor*, 535 U.S. 162, 171–72 (2002) (citation and internal quotation marks omitted); *see also Lafferty v. State*, 2007 UT 73, ¶ 62, 175 P.3d 530 (explaining that a defendant "must show that an actual conflict of interest adversely affected his lawyer's performance" (citation and internal quotation marks omitted)).

¶15    Here, Defendant's motion is accompanied by several documents, including affidavits from himself and Cousin, a letter Cousin wrote to the judge in Cousin's case, and Cousin's statement in support of his guilty plea. Based on the facts alleged in these documents, Defendant suggests that Attorney may have made the decision not to call Cousin as a witness in Defendant's trial due to a conflict of interest. Defendant explains that, if granted a rule 23B remand, he would subpoena Attorney to question him about that decision.

¶16    The State opposes remand, arguing first that "[m]uch of the information" attached by affidavit to Defendant's rule 23B motion "already appear[s] in the record"; in other words, that the motion is not supported by facts outside the existing record. We agree that a significant portion of the affidavit information is indeed duplicative of information already in the record. But much is not all; even the State does not assert duplicativeness as to Cousin's affidavit, a letter from Cousin to the judge, and Defendant's own affidavit. These attachments contain information relevant to Defendant's allegation that Attorney refrained from fully exploring Cousin's involvement in and responsibility for the attempted drug deal. For example, Cousin's affidavit claims that Attorney did not ask him about testifying at Defendant's trial and that, if Cousin had been called, he would have testified that he did not arrange to have Defendant act as an intermediary in a drug deal. Cousin's letter to the judge in his case and his affidavit in this case suggest that

Attorney was representing Cousin in other matters beyond the attempted-possession case. And Defendant's affidavit claims that he brought the issue of Cousin testifying to Attorney's attention and that he had believed that Cousin would in fact be called to testify. These pieces of information establish the need for a rule 23B remand. Specifically, the information explains why Attorney should be subpoenaed to testify regarding the reasoning behind his election not to challenge the evidence relating to Cousin and not to call Cousin as a witness. Thus, the rule 23B motion contains relevant facts that are outside the existing record.

¶17　The State also asserts that, "[a]ssuming Defendant's extra-record evidence is true, his claim of an actual conflict of interest remains entirely speculative." The Utah Supreme Court has recently clarified the term speculative in the context of a rule 23B motion:

> "Speculation" is "mere guesswork or surmise," a "conjecture," or a "guess." In the context of rule 23B, speculative allegations are those that have little basis in articulable facts but instead rest on generalized assertions. . . . [W]hen a defendant alleges that counsel failed to investigate or call a witness, the defendant must, at the very least, identify the witness. It is therefore "improper to remand a claim under rule 23B for a fishing expedition." The mere hope that an individual may be able to provide information if subpoenaed to testify is not sufficient. An affiant must submit specific facts and details that relate to specific relevant occurrences.

*State v. Griffin*, 2015 UT 18, ¶ 19 (citations omitted).

¶18　The State argues that the rule 23B allegations are speculative because Defendant "proffers no impeachment

evidence that was available to [Attorney] that made impeachment possible." We first note that Attorney's failure to challenge the introduction of Cousin's out-of-court statements allowed the State to present that evidence, which was harmful to the defense, without any attempt by Attorney to mitigate its effect—for example, by highlighting Cousin's other charges and plea deal.[4] But in any event, the focus on impeachment ignores the possibility that Cousin's direct testimony could have been helpful to Defendant. According to Cousin's affidavit, he would have testified that he did not arrange to have Defendant act as an intermediary in the attempted drug deal. Such testimony might well have assisted the defense, especially given its source—the only person in this case who was found to be in possession of drugs. Thus, without regard to whether Cousin could have been impeached, the facts alleged in the rule 23B motion, "if true, could support a determination that counsel was ineffective." *See* Utah R. App. P. 23B(a).

¶19 The State also argues that the alleged conflict of interest is speculative because, "without showing that [Attorney's] decision actually advanced the crucial witness's interests, the evidence suggests only objectively unreasonable representation that carries with it the burden of also proving prejudice." The State notes that Defendant must prove that Attorney actually advanced Cousin's interests over Defendant's and asserts that Defendant "cannot make that showing."

¶20 The factual allegations of Defendant's rule 23B motion, if true, show that Cousin's testimony could have assisted the defense, that Attorney was aware of that possibility, that Cousin had accepted a deal to plead guilty to a lesser charge than what

---

4. Defendant notes that, while Cousin was arrested for a first-degree felony, the State charged Cousin with a second-degree felony and then amended that charge to allow Cousin to plead guilty to only a third-degree felony.

he had originally been charged with, and that Attorney knew Cousin was facing charges beyond the one to which he had pled guilty and been sentenced. And the record facts show that Attorney did not call Cousin to the stand or posit that Cousin was culpable of a greater crime than the lesser charge to which he had pled guilty. These facts, considered together, raise the possibility that Attorney's decision was the result of conflicting duties to Defendant and Cousin beyond mere speculation, i.e., the possibility is more than "mere guesswork or surmise." *See State v. Griffin*, 2015 UT 18, ¶ 19 (citation and internal quotation marks omitted). For example, Attorney may well have been concerned that Cousin's testimony would affect future decisions by the Board of Pardons and Parole or the State's willingness to offer Cousin plea deals in his other cases. Furthermore, Attorney may have avoided confronting Cousin or challenging evidence relating to him because doing so might breach Attorney's duties, including that of confidentiality, owed to Cousin.

¶21 Moreover, this is precisely the type of information gap that rule 23B was designed to address. The State's argument would place Defendant in a Catch-22; because Defendant does not know precisely the content of Attorney's testimony, Defendant should not be allowed to subpoena Attorney to testify. We cannot agree to such a restrictive interpretation of rule 23B with respect to ineffective-assistance-of-counsel claims based on conflicts of interest. Indeed, the person most able to explain Attorney's decision is Attorney himself, and the rule 23B motion explains that Defendant seeks to subpoena Attorney about that decision on remand. *Cf. id.* (rejecting "a strict rule . . . that the affidavit must come from the potential witness himself").

¶22 The State further argues that perhaps "a tactical reason other than the alleged conflict exists for [Attorney's] decision not to ensure [Cousin] took the stand." The State notes that Attorney was able to present a defense not reliant on Cousin's testimony and that presenting Cousin to the jury may have "deteriorated

the evidence" supporting that defense. Specifically, although the State concedes that Defendant's strategy was to portray himself as "a drug user but not a seller" and to "convince the jury that he did not become a seller simply by associating with someone who intended . . . to sell meth," the State asserts that Cousin's corroboration could have been weakened in the jury's view due to their family ties and that it risked associating Defendant with Cousin's criminal record. Thus, in the State's view, because not calling Cousin was within the catalogue of objectively reasonable trial strategies, Attorney's decision cannot amount to ineffective assistance of counsel.

¶23    However, while there may have been multiple trial strategies that entailed not calling Cousin as a witness for one reason or another, the essential issue is not whether any objective counsel could have reasonably decided to forgo Cousin's testimony. This is because the *Strickland* test of objectively deficient performance and resulting prejudice is supplanted by the actual-conflict-of-interest test when considering a rule 23B motion based on ineffective assistance of counsel. *See Mickens v. Taylor*, 535 U.S. 162, 171–72 (2002); *see also supra* ¶ 14. It is true that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). But where one of the objectively reasonable defenses is foreclosed by an attorney's conflict of interest, that attorney's election to present a different defense may not be the result of his or her independent determination that the different defense is truly the best for the defendant. *Cf. Mickens*, 535 U.S. at 171–72; *Lafferty v. State*, 2007 UT 73, ¶ 62, 175 P.3d 530 ("[T]he relevant question is whether [a defendant's] counsel was forced by his prior representation [of another client] to make choices that advanced [the other client's] interests to [the defendant's] detriment."; *id.* ("The right to counsel includes the right to counsel free from conflicts of interest. . . . In cases where an actual detrimental conflict has been established, we will presume prejudice.").

¶24 The question before us is whether it is possible that this particular counsel elected to forgo a witness's testimony due to a conflict of interest. We conclude that the possibility exists and that Defendant's allegations are more than "guesswork" or a "fishing expedition" because he has provided "specific facts and details that relate to specific relevant occurrences." *See Griffin*, 2015 UT 18, ¶ 19 (citations and internal quotation marks omitted).


CONCLUSION

¶25 Defendant's rule 23B motion is supported by affidavits alleging facts outside the existing record. Those facts are sufficiently detailed so as to be non-speculative. And, if proven, they may show that Attorney had a conflict of interest that adversely affected his representation of Defendant.

¶26 Accordingly, we grant Defendant's rule 23B motion and remand to the district court to conduct an evidentiary hearing. The district court shall determine (1) whether Attorney's representation of Cousin resulted in an actual conflict of interest with respect to his representation of Defendant, to which Defendant did not consent, and (2) whether that conflict of interest caused Attorney's representation of Defendant to be constitutionally ineffective.

¶27 Remanded.

———————