2018 UT App 187

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL ALAN JORDAN,
Appellant.

Amended Opinion[1]
No. 20160439-CA
Filed September 27, 2018

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 141910848

Marshall M. Thompson and Alexandra S. McCallum,
Attorneys for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.

HARRIS, Judge:

¶1 A jury convicted Michael Alan Jordan of thirty-three felonies, including sexual abuse of two of his minor step-children, possession of child pornography, and tampering with a witness. Jordan appeals, arguing that his trial counsel provided constitutionally ineffective assistance by, among other things,

---

1. This Amended Opinion replaces the Opinion in Case No. 20160439-CA that was issued on August 30, 2018. After our original opinion issued, we noted an inaccuracy in Paragraph 30. This Amended Opinion corrects that inaccuracy, but does not alter any of the conclusions reached in our original opinion.

failing to take steps necessary to introduce impeachment evidence against one of his stepchildren, and failing to object to the prosecutor's closing argument regarding Jordan's possession of certain photographs. Jordan also asserts that the State's evidence was insufficient to support a conviction on four of the counts on which he was convicted.

¶2 In addition, Jordan seeks a remand under rule 23B of the Utah Rules of Appellate Procedure so that the trial court can make evidentiary findings in connection with his contention that his trial counsel provided constitutionally ineffective assistance. In his rule 23B motion, Jordan also advances the argument regarding counsel's failure to impeach one of his step-children, and additionally argues that his counsel should have presented evidence that one of his step-children also had access to the computer that contained images of child pornography.

¶3 For the reasons that follow, we affirm twenty-one of Jordan's thirty-three convictions, but vacate his conviction on one count for lack of sufficient evidence. We also grant Jordan's rule 23B motion, at least in part, with regard to his other eleven convictions, and remand this case to the trial court for further proceedings on those counts.

BACKGROUND

¶4 In 2008, a woman (Mother) moved to West Valley City with her three children. At that time, Mother's oldest son (Mark[2]) was twelve, and her younger son (Luke) was six. Jordan

---

2. We use the pseudonyms "Mark" and "Luke" for the sons, instead of their real names, in an effort to protect the privacy of the victims. *See State v. Alzaga*, 2015 UT App 133, ¶ 2 n.2, 352 P.3d 107 (using pseudonyms for similar reasons).

lived in the same part of the city. Mark met Jordan in the neighborhood and later introduced him to Mother. Mother and Jordan married in 2010, and later had two children of their own.

¶5     According to Mark, Jordan began to sexually abuse him in 2008, soon after they met, and continued to do so periodically for the next five or six years. In 2014, when Mark was seventeen, Jordan showed him photographs of Jordan sexually abusing Luke. Mark later testified that, after seeing the photographs of his little brother, "I was devastated. I was done. I'd had enough." Later that same year, Mark informed Jordan that he would be moving out of the house in September 2014, as soon as he turned eighteen.

¶6     The day after Mark's birthday, police received an anonymous call requesting a "welfare check" at the family residence, where Jordan, Mother, and Luke were present. When a police officer arrived, Luke maintained that he was "fine." The officer and Jordan then left the residence. Once the officer and Jordan were gone, Luke decided that it was "the perfect time to tell [his] mom" that "everything's not okay" and that Jordan had been sexually abusing him for over five years. After hearing this, Mother met briefly with police later that evening, and then took both Luke and Mark in for police interviews the following day.

¶7     After investigation, the State charged Jordan with thirty-three criminal counts, including four counts of aggravated sexual abuse of a child, first degree felonies; four counts of sodomy upon a child, first degree felonies; four counts of forcible sodomy, first degree felonies; sixteen counts of sexual exploitation of a minor, second degree felonies; one count of tampering with a witness, a third degree felony; and four counts of dealing harmful material to a minor child, third degree

felonies. Six of these counts involve Jordan's actions toward Luke, and twenty involve Jordan's actions toward Mark.[3]

¶8　The case proceeded to trial, and Mark and Luke each testified that Jordan sexually abused them for years. Each separately testified that the abuse included mutual masturbation, mutual oral sex, and anal sex, as well as Jordan showing them pornography and taking nude or partially-nude photographs of them. Luke also testified that, shortly before he disclosed the abuse to Mother, Jordan took him into Jordan's office, showed him a gun, and told Luke that if he ever told anyone, Jordan would shoot him and his family.

¶9　Also during trial, the prosecution introduced into evidence various photographs obtained from Jordan's laptop. A forensic examiner described five photographs recovered from the laptop (marked as Exhibits 32–36) that depicted young nude males. Relatedly, during Mark's testimony, Mark also described nine additional photos recovered from the laptop (marked as Exhibits 23–31) that depicted Mark's naked body, including his genitals. Mark explained that Jordan took eight of the nine photos while Mark was still a minor, and that the ninth photograph was a selfie that Mark took of himself, while he was a minor, and then electronically sent to Jordan. Mark testified that Jordan would sometimes ask him to take photographs of himself while naked and send them to Jordan, and that Jordan told him that if he did not do so he would be "in trouble."

¶10　At a later point in the trial, the prosecutor also asked Mother about two more photographs discovered on Jordan's laptop (marked as Exhibits 21–22). Mother explained that

_____

3. Two of the other counts involve photographs of one of Jordan's younger, toddler-aged sons, and the remaining five counts involve photographs of other unidentified males.

Exhibit 21 was a photograph of one of their then-toddler sons sitting naked on a counter in a bathroom, and that Jordan could be seen in the mirror taking the photo. Mother explained that Exhibit 22 showed the same child naked while "walking outside" near a canal. Mother stated that she did not know who took that photograph.

¶11 During trial, but outside the presence of the jury, Jordan argued that the State would need expert testimony to establish that the persons depicted in Exhibits 33–36 were indeed under eighteen years of age. The trial court disagreed, determining that "the jurors can look to their life experience and to their judgment in reviewing [the] evidence." The court later determined that there was sufficient evidence to allow the charges related to those four exhibits to go to the jury.

¶12 During closing, the State made specific arguments regarding Exhibits 21 and 22. Referring to Exhibit 21—the photograph of the naked toddler in the bathroom—the State asked the jury to "review that photo in light of all of the evidence," and stated that, "when you do that, you know that [Jordan] wasn't taking a picture of his son because he's cute, because he wants a picture of his kid in the bathroom. He was doing it because it's child pornography." Referring to Exhibit 22—the photograph of the naked toddler walking outside—the prosecutor acknowledged that "under normal circumstances, you could say, hey, that's just a dad taking a picture of his kid when he's naked, not a big deal," but that under the circumstances of this case, "there should be no doubt that the defendant took that picture because he wanted a picture of a naked little boy. Why? Because he's sexually attracted to boys."

¶13 The jury convicted Jordan on all thirty-three counts.

## ISSUES AND STANDARDS OF REVIEW

¶14    Jordan appeals his convictions, and in addition has moved for remand under rule 23B of the Utah Rules of Appellate Procedure. "A remand under rule 23B is 'available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective.'" *State v. Crespo*, 2017 UT App 219, ¶ 24, 409 P.3d 99 (quoting Utah R. App. P. 23B(a)).

¶15    In his appeal, Jordan raises two types of arguments. First, he contends that his trial counsel was constitutionally ineffective. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Beckering*, 2015 UT App 53, ¶ 18, 346 P.3d 672, 677 (quotation simplified).

¶16    Second, he contends that the State failed to introduce sufficient evidence to convict him on certain counts. "When we review a challenge to the sufficiency of the evidence, we review the evidence and all inferences that may reasonably be drawn from it in the light most favorable to the jury's verdict," and we "vacate the conviction only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt" about the defendant's guilt. *See State v. Patterson*, 2017 UT App 194, ¶ 2, 407 P.3d 1002.

## ANALYSIS

¶17    We begin by addressing Jordan's rule 23B motion. We then turn to the arguments he raises on appeal.

### I. Jordan's Rule 23B Motion

¶18    Jordan raises three issues in his rule 23B motion, two of which we discuss here at length. First, Jordan asserts that "[t]rial counsel was ineffective for failing to investigate or timely pursue a motion under rule 412 of the Utah [R]ules of Evidence" that would have allowed Jordan to more effectively cross-examine Luke. Second, Jordan asserts that trial counsel was ineffective for failing to show that Mark, in addition to Jordan himself, "had full access to" Jordan's laptop computer.[4] We discuss these issues, in turn, after a discussion of rule 23B generally.

### A

¶19    In all criminal cases, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel includes the right to effective counsel, *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and applies to privately-retained counsel as well as counsel appointed by the court, *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To demonstrate that his counsel provided constitutionally defective representation, Jordan must establish both (1) that counsel's performance was objectively deficient, and (2) that there is a reasonable probability that, but for counsel's deficient performance, Jordan would have received a more favorable outcome at trial. *State v. Burnett*, 2018 UT App 80, ¶¶ 21–22.

---

4. Jordan raises one other issue in his rule 23B motion: he asserts that his attorney should have obtained an expert opinion regarding the age of the individuals depicted in Exhibits 33–36. We discuss this issue later, in connection with Jordan's contention, made in his appeal, that the State presented insufficient evidence to convict him on the counts supported by Exhibits 33–36. *See infra* ¶ 64 n.14.

¶20   A defendant may raise ineffective assistance of counsel claims on appeal only if "the trial record is adequate to permit decision of the issue." *State v. Griffin*, 2015 UT 18, ¶ 16 (quotation simplified). If the record is not adequate, a defendant's ability to bring such claims on appeal is impaired. *See id.* (stating that "a defendant cannot bring an ineffective assistance of counsel claim on appeal without pointing to specific instances in the record demonstrating both counsel's deficient performance and the prejudice it caused the defendant"). Rule 23B of the Utah Rules of Appellate Procedure addresses this scenario, and provides a mechanism, in appropriate circumstances, for a defendant to develop the facts necessary to support a claim for ineffective assistance of counsel. *See Griffin*, 2015 UT 18, ¶ 18 (stating that "[t]he purpose of a rule 23B remand is to develop new evidence in the record, without which a defendant cannot bring his ineffective assistance of counsel claim on appeal"); *see generally* Utah R. App. P. 23B.

¶21   Under rule 23B, "[a] party to an appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel." Utah R. App. P. 23B(a). "The motion shall be available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.*; *see also Griffin*, 2015 UT 18, ¶ 18 (noting that "remand is not appropriate where the alleged facts are already in the record"). "[S]peculative allegations are those that have little basis in articulable facts but instead rest on generalized assertions." *Griffin*, 2015 UT 18, ¶ 19.

¶22   In moving for remand under rule 23B, "[t]he motion shall include or be accompanied by affidavits alleging facts not fully appearing in the record on appeal that show the claimed deficient performance of the attorney." Utah R. App. P. 23B(b). "An affiant must submit specific facts and details that relate to

specific relevant occurrences." *Griffin*, 2015 UT 18, ¶ 19. Affidavits in rule 23B motions "shall also allege facts that show the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." Utah R. App. P. 23B(b).

¶23 We have previously identified three requirements that a movant must meet to prevail on a rule 23B motion: (1) the motion "must be supported by affidavits alleging facts outside the existing record"; (2) "the alleged facts must be non-speculative"; and (3) the alleged facts, when assumed to be true, "must establish both elements of a traditional ineffective-assistance claim." *State v. Tirado*, 2017 UT App 31, ¶ 14, 392 P.3d 926. In evaluating a rule 23B motion, "we express no opinion . . . as to the ultimate merits of the ineffective assistance of counsel claim," because the record is undeveloped, and therefore "the State has had little opportunity to counter the factual allegations presented." *Griffin*, 2015 UT 18, ¶ 22.

B

¶24 The first issue Jordan raises in his rule 23B motion is an assertion that his trial counsel, in an effort to impeach Luke's credibility, should have sought to admit—pursuant to rule 412 of the Utah Rules of Evidence—proof that Luke had previously made false allegations of sexual abuse. On this issue, we conclude that Jordan has met his burden under rule 23B, at least insofar as this argument implicates Luke's testimony.

¶25 Rule 412 prohibits the introduction, in certain criminal cases, of "evidence offered to prove that a victim engaged in other sexual behavior" or "evidence offered to prove a victim's sexual predisposition." *See* Utah R. Evid. 412(a)(1)–(2). Our supreme court has stated that the rule was adopted "to ensure that sexual assault victims are not deterred from participating in prosecutions because of the fear of unwarranted inquiries into the victim's sexual behavior." *State v. Tarrats*, 2005 UT 50, ¶ 20,

122 P.3d 581 (quotation simplified). Rule 412 "reflects the recognition that evidence of the victim's unchastity is ordinarily of no probative value on the issue of whether a rape or sexual assault occurred." *Id.* (quotation simplified).

¶26　"Although rule 412 prohibits the admission of any truthful evidence that involves actual physical conduct or that implies sexual contact, the rule does not reach evidence offered to prove allegedly *false* prior claims by the victim." *State v. Clark*, 2009 UT App 252, ¶ 20, 219 P.3d 631 (quotation simplified) (emphasis added); *see also State v. Martin*, 1999 UT 72, ¶ 16, 984 P.2d 975 (stating that "[n]othing in Rule 412 would exclude evidence of an alleged rape victim's previous false allegations of rape"). This is because "evidence of false statements of unrelated sexual assaults . . . are not evidence of sexual conduct per se." *Tarrats*, 2005 UT 50, ¶ 24 (quotation simplified). Evidence of false prior claims by the victim "bear directly on the credibility of the purported victim in a subsequent case," *Clark*, 2009 UT App 252, ¶ 20, and can constitute "strong impeachment evidence [that] would go to the central issue of the case," namely, whether the purported victim was being truthful, *Martin*, 1999 UT 72, ¶ 16.

¶27　To properly introduce such evidence, however, the defendant must first "make a threshold showing of the falsity of prior allegations by a preponderance of the evidence before he can use those allegations to impeach the accuser's testimony at trial." *Tarrats*, 2005 UT 50, ¶ 26.

¶28　No evidence of any prior false allegations by Luke—or by anyone else—was ever introduced during the proceedings in this case. At the preliminary hearing, trial counsel attempted to ask Luke about prior allegations of sexual abuse, but the State objected because Jordan had not yet filed a rule 412 motion and had not yet shown that the evidence he wished to present met any exception to rule 412. The trial court sustained the objection. Later, at a pretrial conference, Jordan's attorney stated that she

"may be requesting a [rule] 412 hearing" if she could "round up the witnesses," but no such motion was ever filed.

¶29　In support of his argument that trial counsel performed deficiently by failing to pursue a rule 412 motion, Jordan attaches to his rule 23B motion a report from a West Valley City police officer. According to that document, "it was reported that while [Luke] was at his [biological] father's house [he] witnessed his half brother and sister who are ten and twelve years old having intercourse. [Luke] was also coaxed into having intercourse with [his] half sister." Later in his report, the officer explained that he was contacted by a caseworker from the Department of Child and Family Services who informed the officer "that [the caseworker] had gone out and obtained statements from all the children involved" and that "the older children were denying [that] anything happened." Additionally, the caseworker reported that the children's father, Mother's previous husband, "denied that he was told anything by [Luke]." The caseworker also informed the officer that "[s]he also looked at this history with the family and found a previous case where [Luke] had not been honest and made similar allegations. That case was closed as unfounded." The officer concluded his report by noting that both he and the caseworker "determined that the allegations were false and that it did not appear that [Luke] was being honest" about the prior allegations. The officer reported that he met with Mother and explained to her that Luke was not being honest, and Mother "appeared very concerned that her son was doing this for attention," and that she "wanted her son to stop telling lies."

¶30　These are striking allegations. In our view, if these allegations had been brought to the trial court's attention in a rule 412 motion, there is a reasonable probability it would have determined that the "threshold showing" of falsity was met (depending, of course, on what other evidence was presented).

Counsel could then have sought to use this evidence at trial during cross-examination of Luke.

¶31   On these facts, we conclude that the requirements of rule 23B are met. The facts set forth in the police report are not "already in the record," are "not speculative," and "could support a determination that counsel was ineffective." *See Griffin*, 2015 UT 18, ¶¶ 18–20. We are unaware of any plausible tactical reason for counsel to have failed to make a rule 412 motion along these lines,[5] and we cannot say that there is no reasonable probability of a different outcome if such evidence had been introduced. Accordingly, we grant Jordan's rule 23B motion on rule 412 grounds, at least as it relates to the six charges describing conduct Jordan allegedly committed toward Luke and which therefore depend heavily on Luke's testimony.[6]

¶32   Jordan, however, asks us to apply this argument to more than just the six charges that depend largely on Luke's testimony. In support of this request, Jordan makes broad (and largely unsupported) allegations that Mother, Luke, and Mark had all "colluded to falsely make accusations of sexual abuse against [Mother's] previous husband." As noted, rule 23B motions must be supported by "non-speculative" facts. *Tirado*, 2017 UT App 31, ¶ 14. "In the context of rule 23B, speculative allegations are those that have little basis in articulable facts but instead rest on generalized assertions." *Griffin*, 2015 UT 18, ¶ 19.

---

5. We are unpersuaded by the State's argument that counsel could have been concerned that introduction of Luke's false allegations would have undermined Jordan's own credibility. That this would have been counsel's motivation seems extremely unlikely, but perhaps the evidence developed on remand will demonstrate otherwise.

6. These counts are Counts 1, 2, 5, 6, 29, and 33.

None of the materials Jordan attaches to his rule 23B motion establish that either Mother or Mark made prior false allegations of sexual abuse against anyone, or that either of them had any role in coaching Luke into making prior false allegations against his half-siblings.[7] The only support for Jordan's broad theory of collusion is found in his own self-serving statements made to police investigators. On this record, we cannot conclude that there is a reasonable probability of a different outcome on any of the charges that do not depend on Luke's testimony. Accordingly, we decline to apply Jordan's rule 412 argument to any charge other than the six charges involving Luke.

C

¶33    The second issue Jordan raises in his rule 23B motion is an assertion that trial counsel performed deficiently by "failing to show that [Mark] had full access" to Jordan's laptop computer. On this issue, we likewise conclude that Jordan has met his burden under rule 23B, but conclude that the applicability of this argument is similarly limited.

¶34    The State filed several charges against Jordan regarding child pornography. One of the specific elements that the State had to prove, in order to convict Jordan on those charges, was that Jordan had "knowingly produce[d] [or] possess[ed] . . . child pornography." *See* Utah Code Ann. § 76-5b-201(1)(a)(i) (LexisNexis 2017). "[A]ctual physical possession is not necessary to convict a defendant" of a possession crime. *State v. Fox*, 709

---

7. Jordan includes this argument in his appellate brief also, implying without evidentiary support that Mark "would help coach [Luke] to make false allegations." His argument fails on appeal for the same reason that it fails in the rule 23B context: there is no support for it, either in the trial record or in the materials submitted in connection with the rule 23B motion.

P.2d 316, 318–19 (Utah 1985). For possession charges, the circumstantial evidence necessary to convict is evidence showing a "sufficient nexus between the accused and the [contraband] to permit an inference that the accused had both the power and the intent to exercise dominion and control over the [contraband]." *State v. Ashcraft*, 2015 UT 5, ¶ 19, 349 P.3d 664 (quoting *Fox*, 709 P.2d at 319); *see also Constructive Possession*, Black's Law Dictionary (10th ed. 2014) (defining constructive possession as "[c]ontrol or dominion over a property without actual possession or custody of it").

¶35    When only one person has access to a computer on which child pornography is located, demonstrating constructive possession is straightforward: it is clear that the sole person with access to the computer has at least constructive possession of the images. *See United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994) (stating that "[d]ominion, control, and knowledge, in most cases, may be inferred if defendant had exclusive possession" of the place where contraband is found); *see also United States v. Moreland*, 665 F.3d 137, 150 (5th Cir. 2011) (same statement, but in the context of a child pornography case). The situation is different, however, when multiple individuals have access to a computer on which child pornography is stored. In that situation, "joint occupancy alone cannot sustain" an inference of constructive possession, and prosecutors have an increased burden in demonstrating constructive possession. *See Mills*, 29 F.3d at 549 (also stating that "[i]n cases of joint occupancy," the government "must present evidence to show some connection or nexus between [a] defendant and . . . the contraband"); *see also Moreland*, 665 F.3d at 150 (stating that "[w]hen the government seeks to prove constructive possession of contraband found in a jointly occupied location, it must present additional evidence of the defendant's knowing dominion or control of the contraband, besides the mere joint occupancy of the premises, in order to prove . . . constructive possession").

¶36 In this case, because no evidence was introduced at trial indicating that anyone other than Jordan had access to the laptop computer, the State properly relied upon the presumption that Jordan—as the only person with access—had constructive possession of the images found there. Jordan asserts in his rule 23B motion, however, that evidence exists that indicates that he did not have exclusive possession of the laptop. Specifically, Jordan has submitted an affidavit from his brother in which Jordan's brother explained that, on multiple occasions, he observed Mark accessing Jordan's laptop by entering the password into the computer. Jordan supplements this with his own affidavit alleging that Mark had full access to his laptop.

¶37 This evidence, if true, would tend to support the conclusion that both Mark and Jordan had access to the laptop, which would require the State to meet a more stringent burden in order to prove that Jordan constructively possessed the images. *See id.* With regard to ten of the sixteen child pornography charges, the State's evidence satisfied even the higher burden. Nine of those counts (Counts 15–23) were based on photographs of Mark, and Mark testified that Jordan took eight of those photos himself, and that Jordan asked Mark to send him the ninth one. Another of those counts was based on the photograph of Jordan's toddler son sitting on the bathroom counter, and Mother testified that Jordan took that photograph. With regard to these ten photographs, the State clearly met even the more stringent burden of demonstrating that Jordan had constructive possession of them.

¶38 With regard to the other six charged counts of sexual exploitation of a minor, however, the State presented no evidence of constructive possession other than Jordan's access to the laptop computer on which the photographs were found.

Exhibits 32–36 were discovered without metadata,[8] so the State's expert could not determine when the file was downloaded or viewed, or any details about when or how the photograph was taken. No other witness offered any evidence about where these photographs came from, how they were created, or how they ended up on Jordan's laptop. Likewise, Exhibit 22 (the photograph of Jordan's toddler son walking naked along a canal) had no metadata associated with it and, although Mother testified that her son was the child depicted in the photograph, no witness testified about who took the photograph or how it came to be on Jordan's laptop.

¶39   Accordingly, we conclude that the requirements of rule 23B are met, at least with regard to the charges associated with Exhibits 22 and 32–36. The new facts set forth in the affidavits are not "already in the record," are "not speculative," and "could support a determination that counsel was ineffective." *See Griffin*, 2015 UT 18, ¶¶ 18–20. We are unaware of any plausible tactical reason for counsel to have failed to require the State to meet the more stringent burden regarding constructive possession, and we cannot say that there is no reasonable probability of a different outcome on six of the child pornography charges if such evidence were introduced. Therefore, we conclude that Jordan has met his rule 23B burden with regard to these six charges, and we grant his rule 23B

---

8. The State's expert explained that "metadata" is "data that's embedded within" an electronic file. With regard to digital photographs, the State's expert clarified that, where metadata is available, it can include such things as the make and model of the camera used to take the photograph, the date and time it was taken, and whether the flash was on or off.

motion on "constructive possession" grounds, as it relates to Counts 14, 24, 25, 26, 27,[9] and 28.

## II.  Jordan's Appeal

¶40    Because we have granted Jordan's rule 23B motion only with respect to twelve of Jordan's thirty-three convictions, we must proceed to consider his appeal. There, Jordan raises two additional arguments. First, he takes issue with his convictions on Counts 13 and 14, asserting that his counsel was ineffective for "failing to object to the prosecutor's misstatement of the law about what constitutes sexual exploitation of a minor and for failing to request an accurate jury instruction." Second, Jordan takes issue with his convictions on Counts 25–28, asserting that without expert testimony regarding the age of the individuals depicted in Exhibits 33–36, the State's evidence was insufficient. We address these arguments, in turn.

### A

¶41    On Counts 13 and 14, Jordan was convicted of sexual exploitation of a minor (child pornography) associated with the two photographs of his toddler-aged son, one taken in the bathroom and one taken along a canal. Jordan challenges those convictions, asserting that those two photographs were objectively not sexual in nature, and arguing that a defendant cannot be convicted of child pornography charges regarding objectively-innocuous photographs based simply on his intent in possessing them. He asserts that his trial counsel was ineffective for failing to raise these arguments at trial. We find Jordan's

---

9. As discussed below, *infra* part II.B, ¶ 64, we vacate Jordan's conviction on Count 27 for other reasons, so there will be no need for the trial court to concern itself with that count on remand in connection with the rule 23B proceedings.

arguments persuasive with regard to Exhibit 22 (the canal photograph), but are unconvinced by his arguments with regard to Exhibit 21 (the bathroom photograph).

¶42    A person commits the crime of sexual exploitation of a minor when that person "knowingly produces [or] possesses . . . child pornography" or "intentionally . . . views child pornography." Utah Code Ann. § 76-5b-201(1)(a) (LexisNexis 2017). Child pornography, in turn, is defined as "any visual depiction . . . of sexually explicit conduct, where" either (a) "the production of the visual depiction involves the use of a minor engaging in sexually explicit conduct," (b) "the visual depiction is of a minor engaging in sexually explicit conduct," or (c) "the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." *Id.* § 76-5b-103(1). And "sexually explicit conduct" is defined, among other definitions, as "the visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person." *Id.* § 76-5b-103(10)(f).[10]

---

10. Jordan also asserts that counsel was ineffective for failing to argue, based on the so-called *Dost* test, that Exhibits 21 and 22 were "not sexually explicit." *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) (establishing factors to determine whether a photograph constitutes a lascivious exhibit of the genitals or pubic area); *see also State v. Bagnes*, 2014 UT 4, ¶ 42, 322 P.3d 719 (explicitly adopting the *Dost* test "[i]n defining the concept of lascivious exhibition of the genitals or pubic area of a child" (internal quotation marks omitted)). However, criminal liability on these two counts turns not on the "lascivious exhibition of the genitals, [or] pubic region," *see* Utah Code Ann. § 76-5b-103(10)(e) (LexisNexis 2017), but instead turns on Jordan taking the picture "for the purpose of causing the sexual arousal of any person," *see id.* § 76-5b-103(10)(f); *see also State v. Morrison*,

(continued…)

¶43    Jordan argues that his trial counsel performed deficiently by failing to object when the State told the jury that the images of Jordan's toddler-aged child, which were not objectively sexual, were sexually exploitative "merely because they were found on . . . Jordan's computer." Jordan asserts that "the prosecutor explicitly argued that what would not be child pornography under normal circumstances was child pornography in this case simply because . . . Jordan, whom the prosecutor claimed was a pedophile, may have possessed the images." Jordan asserts that the State's argument is at odds with our supreme court's opinion in *State v. Morrison*, 2001 UT 73, 31 P.3d 547.

¶44    In *Morrison*, two defendants challenged the constitutionality of the sexual exploitation of a minor statute on overbreadth grounds. *Id.* ¶¶ 6–12. The court rejected the defendants' overbreadth challenge, instead agreeing with the State's reading of the sexual exploitation of a minor statute that "depictions of nude or partially nude minors, without more, are not proscribed by the statute," and that "the statute require[d] that the depiction be for the purpose of sexual arousal of any person." *Id.* ¶ 9 (quotation simplified). In reaching this conclusion, the court noted that "we look to the materials themselves, not the intent of the possessor, to determine whether they are proscribed as sexually exploitive." *Id.* ¶ 10.

¶45    During closing argument in this case, the prosecutor argued that Jordan "wasn't taking a picture of his son because he's cute, because he wants a picture of his kid in the bathroom. He was doing it because it's child pornography." The prosecutor further asserted that, "in this case, in light of all of the evidence that you've heard, there should be no doubt that the defendant

_____

(…continued)
2001 UT 73, ¶ 12, 31 P.3d 547. Therefore, we determine that counsel was not ineffective for failing to object on this ground.

took that picture because he wanted a picture of a naked little boy. Why? Because he's sexually attracted to boys." Jordan asserts that these arguments improperly focused on his intent as possessor in contravention of *Morrison*. *See id.*

¶46    The State maintains that its closing argument was not at odds with *Morrison*, because—at least with regard to the two toddler photos—the State is seeking criminal sanctions against Jordan not necessarily based on his intent as possessor but, instead, based on his intent as producer. The State asserts that the *Morrison* court, as well as the applicable statutory subsection, *see* Utah Code Ann. § 76-5b-103(10)(f) (LexisNexis 2017), expressly allows the imposition of criminal liability in child pornography cases based on the intent of the individual who produced the image. We agree with the State that its argument is consistent with *Morrison* and the applicable statute.

¶47    Although the *Morrison* court saw potential constitutional infirmities with imposing criminal liability for possession of otherwise-innocuous photographs merely on the basis of the intent of the possessor of the photograph, *see* 2001 UT 73, ¶ 10, it saw no such infirmities with imposing criminal liability based on the intent of the producer of the photograph, *id.* Indeed, the court made clear that criminal liability can indeed turn

> on the purpose for which the nude or partially nude minor was *depicted*. If his possession was knowing, and the nude or partially nude minor was depicted for the purpose of causing sexual arousal of any person, a defendant may properly be subject to criminal liability. Under this reading . . . , [the statute] is not unconstitutionally overbroad.

*Id*. ¶ 12 (quotation simplified). The State asserts that Jordan's trial counsel was not ineffective for failing to object to the

prosecutor's closing argument, because it was proper under *Morrison* for the jury to take into account Jordan's intentions as *producer*, and because the prosecutor's argument specifically discussed Jordan's intent as producer rather than as possessor. Indeed, the prosecutor argued that Jordan "took that picture because he wanted a picture of a naked little boy," and that he did so "[b]ecause he's sexually attracted to boys."

¶48 We agree with the State's interpretation of *Morrison*. One way for the State to establish criminal liability under the exploitation of a minor statute was to prove that the photograph was created "for the purpose of causing sexual arousal of any person." *See* Utah Code Ann. § 76-5b-103(10)(f); *see also Morrison*, 2001 UT 73, ¶ 12. And one way to prove that the minor was depicted "for the purpose of causing sexual arousal of any person" is to establish that Jordan himself took the photograph for the purpose of causing his own sexual arousal.

¶49 But this argument can only succeed if there is evidence that Jordan was the one who took the photograph. Absent such evidence, Jordan correctly argues that asking the jury to examine his intent is in violation of *Morrison*, because his only established relationship to the photograph is as its possessor. *See Morrison*, 2001 UT 73, ¶ 10.

¶50 As discussed above, Mother testified that Jordan took the photograph marked as Exhibit 21 (the bathroom photo): she identified Jordan as the person visible in the mirror in the photo. Thus, Jordan's trial counsel was not constitutionally ineffective for failing to object to the prosecutor's closing argument regarding Exhibit 21, because the State's argument—asking the jury to consider Jordan's intent in producing the photograph— was not improper, and any such objection likely would have been overruled. "The failure to raise futile objections does not constitute ineffective assistance of counsel." *State v. Christensen*, 2014 UT App 166, ¶ 10, 331 P.3d 1128 (quotation simplified).

¶51 The same cannot be said, however, for Exhibit 22 (the canal photograph), because the State introduced no evidence regarding how it was produced. On cross-examination, Mother testified that although she knew Jordan took the bathroom photograph, she did not know who took the canal photograph. Additionally, the State's expert testified that there was no metadata associated with the canal photograph. And the State did not otherwise provide evidence that Jordan took the canal photograph. Given this evidentiary posture, it would not have been futile to object to the State's closing argument regarding Exhibit 22. With regard to this photograph, we conclude that the elements of ineffective assistance of counsel are met: we perceive no tactical reason why such an objection was not made, and we conclude that there would have been at least a reasonable probability of a better outcome for Jordan, with respect to this one count, had such an objection been made.

¶52 Accordingly, we affirm Jordan's conviction on Count 13 (the bathroom photograph), but remand for a new trial on Count 14, the count based on possession of Exhibit 22 (the canal photograph).[11]

---

11. Jordan also argues that his trial counsel was ineffective for failing to object to jury instruction 62 and for not requesting an "accurate" jury instruction. Jordan takes issue with the following portion of jury instruction 62:

> It is not an element of the offense of sexual exploitation of a minor that the material appeal to the prurient interest in sex of the average person nor that the prohibited conduct need be portrayed in a patently offensive manner.

He asserts that this instruction "gives support to the prosecution's legally incorrect standard" regarding the intent of the possessor. We reject this argument. As an initial matter, this

(continued…)

B

¶53 Second, Jordan asserts that, without supporting expert testimony, the State presented insufficient evidence to sustain a conviction on Counts 25–28—the counts convicting him for possession of Exhibits 33–36, four photographs depicting nude young males. We have already determined that these four counts should be remanded for further proceedings associated with the "constructive possession" issue raised in Jordan's rule 23B motion. We proceed to discuss the merits of this issue, because it will become relevant again in this case, no matter how the "constructive possession" issue is eventually resolved.[12]

¶54 The four photographs depict post-pubescent nude young males. As noted above, the photographs were found on Jordan's

---

(…continued)

instruction mirrors—word for word—Utah Code section 76-5b-301(3). It is therefore an accurate statement of the law. And second, Jordan's argument ignores that the jury was entitled to convict him of sexual exploitation of a minor for possessing even relatively innocuous photos of naked toddlers, regardless of his intent as a possessor, if it was convinced that he had improper intent as a producer. Therefore, counsel was not ineffective for failing to object to this instruction or for failing to request additional instructions.

12. If the "constructive possession" issue is resolved in favor of the State on remand (for instance, if it is determined that Mark did not actually have access to Jordan's laptop), then we would need to resolve the question of whether Jordan's convictions on those counts can be upheld. Alternatively, if the "constructive possession" issue is resolved in favor of Jordan on remand, a new trial will be necessary on these counts, and the parties may benefit from our guidance on these issues for the new trial.

laptop computer, but none of the electronic files contained any metadata, so no information was provided to the jury about when the photographs were taken or by whom. Similarly, no witness testified about the individuals depicted in the photographs, and therefore no information was provided to the jury about the age of the individuals (for example, whether they are older or younger than eighteen).

¶55   Jordan correctly asserts—and the State acknowledges—that it is the State's burden to prove that the individuals depicted in the photographs are minors. One obvious way for prosecutors to meet this burden is to have the individual depicted in the photograph testify, as Mark did in this case with regard to Exhibits 23–30, that he or she was under the age of eighteen when the photograph was taken. Alternatively, other information may be available about the individual depicted in the photograph that can be introduced into evidence through documents or the testimony of other witnesses.

¶56   In many child pornography prosecutions, however, the individual depicted in the photograph is unavailable, and no additional information is known about them. That is the case here with regard to the individuals depicted in Exhibits 33–36. In such cases, at least where it is difficult for laypersons to tell whether the individual depicted is a minor, Jordan argues that the State cannot meet its burden without the assistance of expert testimony. The State, by contrast, citing *State v. Alinas*, 2007 UT 83, 171 P.3d 1046, asserts that it is the jury's responsibility to determine the age of the individuals depicted in photographs, and that expert testimony is never required in order to meet the State's burden of proof. On balance, we think that Jordan has the better of the argument.

¶57   In *Alinas*, the defendant was convicted on child pornography charges. In that case, he was found in possession of photographs of very young girls, and even his attorney

conceded "that the images in this case do not appear to be . . . non-minors." *Id.* ¶¶ 2–3, 18. Despite the fact that the individuals depicted in the photographs were clearly minors, the defendant nonetheless argued on appeal that "the State failed to prove the age of the children depicted." *Id.* ¶ 30. Our supreme court rejected that argument on the facts of that case, stating that "courts have generally held that the jury themselves, through visual examination, are capable of making the determination whether the children depicted are under eighteen years of age." *Id.* ¶ 31 (citing cases); *see also id.* ¶ 32 (stating that "whether the children depicted are minors is a question of fact for the jury").

¶58 The State focuses on this language from *Alinas*, and asserts that expert testimony is not required in order for the State to meet its burden of proving that the photographs constitute child pornography. This argument is facially appealing—the language our supreme court used could be interpreted in the manner the State urges.

¶59 But we are ultimately persuaded by Jordan's position on this point. Jordan correctly points out that the cases our supreme court cited in support of its conclusion are in accord: in obvious cases, like *Alinas*, where the individuals depicted are clearly minors, no expert testimony is required, but in close cases, where a layperson might not be able to tell whether the individual depicted is a minor, expert testimony is required. One case often cited for this proposition is *United States v. Katz*, 178 F.3d 368 (5th Cir. 1999). In that case, the court stated that "[t]he threshold question—whether the age of a model in a child pornography prosecution can be determined by a lay jury without the assistance of expert testimony—must be determined on a case by case basis." *Id.* at 373. Sometimes, it will be "possible for the fact finder to decide the issue of age in a child pornography case without hearing expert testimony." *Id.*; *see also id.* (stating that "[a] case by case analysis will encounter some images in which the models are prepubescent children who are

so obviously less than 18 years old that expert testimony is not necessary or helpful"). In other cases, where it is difficult to tell whether the individual depicted is older or younger than eighteen, however, "expert testimony may well be necessary" to help the trier of fact reach a reasoned conclusion. *Id. Katz* was quoted at length, with approval, in *United States v. Riccardi*, 258 F. Supp. 2d 1212, 1218-19 (D. Kan. 2003), a case upon which our supreme court relied in *Alinas*. *See Alinas*, 2007 UT 83, ¶ 31 n.5.

¶60    Indeed, in *Riccardi*, the government "moved to admit six separate computer images" that it maintained constituted child pornography. *See Riccardi*, 258 F. Supp. 2d at 1219. In order to resolve the motion, the trial court "carefully analyzed each computer file to determine whether a lay jury could determine the age of the models without the assistance of an expert." *Id.* It determined that "only two of the six computer files contained images of models who were so obviously less than 18 years old that expert testimony was not necessary to assist the fact finder." *Id.* In accordance with this ruling, the court allowed into evidence the two files containing photographs of obviously-young individuals, but refused to allow the other four files into evidence in the absence of supporting expert testimony. *Id.*

¶61    The prevailing rule in most jurisdictions is as set forth in *Katz* and *Riccardi*. We view our supreme court, by citing favorably to *Riccardi*, as adopting (rather than rejecting) this approach, and we interpret the *Alinas* court's statements regarding jury discretion as being tied to the facts of that case, where the pictures in question obviously (and by stipulation) depicted minors. We do not read *Alinas* as adopting a categorical rule indicating that expert testimony is *never* necessary, even in close cases where a layperson might be unable to tell whether the individual depicted is a minor.

¶62    Under this approach, where the minority of the models is in question, "the trial court must examine each image to be

presented to the jury in order to make discrete assessments, in discharge of its gatekeeping functions, which of the images can be evaluated by the jury on a common-knowledge basis and which require expert testimony to assist the jury in determining whether the person depicted" is a minor. *See State v. May*, 829 A.2d 1106, 1120 (N.J. Super. Ct. App. Div. 2003). In this case, the trial court did examine the photographs, but ultimately determined that, because of the language used by our supreme court in *Alinas*, it was for the jury to determine whether the individuals depicted in the photographs were minors, and that expert testimony was not required.[13] As noted, we read *Alinas* differently.

¶63    We have independently examined the four photographs in question, to determine whether a lay jury can "determine the age of the models without the assistance of an expert." *Riccardi*, 258 F. Supp. 2d at 1219. With respect to three of the images (Exhibits 33, 34, and 36), we conclude that no expert assistance is required to assist a jury in determining that the individuals depicted are indeed minors. The individuals depicted in these photographs clearly appear to be adolescent males under the age

---

13. Even if the trial court had made a "gatekeeping" determination that the photographs clearly depicted minors (rather than a legal determination that *Alinas* did not require any such gatekeeping determination), we would review that gatekeeping determination in this context for correctness, because we do not perceive any factors that place the trial court in any better position than we are to make a determination regarding whether individuals depicted in photographs are clearly minors. *See In re Adoption of Baby B.*, 2012 UT 35, ¶¶ 40–41, 308 P.3d 382 (stating that "[n]o deference is given to the lower court's analysis" where "the lower court has no comparative advantage" in resolving the issue).

of eighteen, and we do not think that a lay jury would need the assistance of an expert to reasonably reach that conclusion.

¶64    Our judgment differs, however, with regard to Exhibit 35. Two individuals appear in the photograph, but only parts of each individual are visible. Because the images only partially depict the two individuals, we cannot envision any principled way for a lay jury to determine, without the benefit of expert testimony to assist it, whether either of the individuals depicted is in fact a minor. Accordingly, we conclude that the State's evidence on this count (Count 27) was insufficient. On that count, therefore, we vacate the judgment of conviction.[14]

---

14. As noted earlier, as part of his rule 23B motion, Jordan asserts that his trial counsel was ineffective by failing to retain and hire an expert witness who would have testified about the age of the models depicted in Exhibits 33–36. We find this argument unpersuasive, because the sort of expert testimony Jordan asserts that his trial counsel should have introduced is unlikely to have altered the jury's conclusion that the models were minors. Attached to his rule 23B motion, Jordan submits a report from an expert witness, who opines that it is "impossible to determine" whether the individuals depicted in the photographs are minors. That is, Jordan's proffered expert cannot offer a reliable opinion that the individuals are in fact eighteen years old or older. All the expert can say is that she cannot tell their ages, although with regard to Exhibit 36 she acknowledges that the individual is a "possible adolescent." We have independently determined that three of the photographs were clear enough to go to the jury without expert testimony on the State's side, and although we acknowledge that defense counsel could have argued from the expert's assessment that the jury should harbor a reasonable doubt about the age of the three models, we do not think that the jury's conclusion regarding the models' minority would have

(continued…)

C

¶65 Before turning to our conclusion, we deem it important to note that Jordan mounts no convincing appellate arguments—either on his direct appeal or in his rule 23B motion—regarding many of the counts on which he was convicted. No fewer than twenty counts[15] concerned Mark, and were supported largely by Mark's trial testimony. The only arguments Jordan advances on appeal that even arguably could affect his convictions on these counts are (a) the unsupported argument—rejected above, *supra* ¶ 32 & n.7—that Mark somehow participated in a scheme to coach his younger brother to level false allegations of sexual abuse, and (b) the argument—also rejected above with regard to Counts 13 and 15–23, *supra* ¶ 37—that the State failed to prove that Jordan had constructive possession of certain photographs. Because we have rejected the only arguments that could conceivably affect his convictions on these twenty counts, we affirm those convictions.

CONCLUSION

¶66 We vacate Jordan's conviction on Count 27 on the basis of insufficient evidence, and remand on that count for the issuance of an order of dismissal.

¶67 We affirm Jordan's conviction on twenty-one of the thirty-three counts with which he was charged. As noted, we affirm all

---

(…continued)
been significantly swayed by testimony from a defense expert who could only say that she could not reliably determine whether the models were minors.

15. Counts 3–4, 7–12, 15–23, and 30–32.

twenty of the counts for which Mark was the primary witness (Counts 3–4, 7–12, 15–23, and 30–32), and we affirm Jordan's conviction on Count 13, the sexual exploitation of a minor count regarding Exhibit 21 (the bathroom photograph).

¶68 We grant Jordan's rule 23B motion on the other eleven counts, and we remand this case to the trial court for further proceedings consistent with this opinion. Specifically, the trial court should explore the following issues regarding Counts 1–2, 5–6, 29, and 33:

> (a) Whether evidence exists that Luke made prior sexual abuse allegations against anyone in the past, including his stepsiblings and, if so, whether those allegations were false;
>
> (b) The extent to which trial counsel investigated any such prior sexual abuse allegations on the part of Luke; and
>
> (c) What reasons objectively diligent trial counsel might have had for not pursuing a rule 412 motion as part of a trial strategy.

Also, the trial court should explore the following issues regarding Counts 14, 24–26, and 28:

> (a) Whether evidence exists that Mark had independent access to Jordan's laptop computer and, if so, whether and how often he exercised that access; and
>
> (b) Whether trial counsel knew of Mark's access to the computer and, if she did, the reasons objectively diligent trial counsel might have had for not including the issue in a trial strategy.

And Jordan is entitled to a new trial on Count 14 in any event, given that the State failed to establish that Jordan took the photograph marked as Exhibit 22 (the canal photograph).

―――――――――